RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

No. 08-1782

KENDRA HUCKABY,

        *Plaintiff-Appellant,*

    *v.*

Nos. 08-1782; 09-1446

TERRY PRIEST, Officer; DAVID FOBAR,
Officer; and CULLEN, Sergeant,

        *Defendants-Appellees.*

No. 09-1446

JOSEPH H. BARTON and FAITH B. PIERCE,

        *Plaintiffs-Appellees,*

    *v.*

TERRY PRIEST, Officer; DAVID FOBAR,
Officer; CULLEN, Sergeant; and KRAMER,
Officer,

        *Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 06-13909; 05-73415—Denise Page Hood, District Judge.

Argued: October 14, 2010

Decided and Filed: April 5, 2011

Before: KEITH, KENNEDY, and COOK, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Hugh M. Davis, Jr., CONSTITUTIONAL LITIGATION ASSOCIATES,
P.C., Detroit, Michigan, for Plaintiffs. Marcelyn A. Stepanski, JOHNSON, ROSATI,
LaBARGE, ASELTYNE & FIELD, P.C., Farmington Hills, Michigan, for Defendants.
**ON BRIEF:** Hugh M. Davis, Jr., CONSTITUTIONAL LITIGATION ASSOCIATES,
P.C., Detroit, Michigan, for Plaintiffs. Marcelyn A. Stepanski, JOHNSON, ROSATI,
LaBARGE, ASELTYNE & FIELD, P.C., Farmington Hills, Michigan, for Defendants.

————————————

## OPINION

————————————

KEITH, Circuit Judge.  Plaintiff-Appellant Kendra Huckaby ("Huckaby") and Plaintiff-Appellee Faith Pierce ("Pierce") (together with her husband Joseph Barton ("Barton")) filed separate 42 U.S.C. § 1983 claims alleging that Defendants, City of Southgate police officers, violated a number of their state and federal rights as a result of their response to a neighbor's erroneous call indicating that a breaking and entering was transpiring at Barton and Pierce's home.  Both Plaintiffs[1] claimed that the police officers violated their Fourth Amendment right to be free from unreasonable searches and seizures and not to be arrested without probable cause.  The district court denied Defendant officers' qualified immunity motion as to Pierce and denied in part Defendant officers' summary judgment motion.  The district court granted Defendant officers' summary judgment motion as to Plaintiff-Appellant Huckaby.  Both Defendants and Plaintiffs Pierce and Huckaby now appeal.  For the reasons that follow, we dismiss Defendants' interlocutory appeal from the district court's denial of qualified immunity as to Pierce's claim for lack of jurisdiction, reverse the district court's grant of summary judgment and qualified immunity to Defendants as to Huckaby's claim, and remand for further proceedings consistent with this opinion.

## I.

Joseph Barton is a pastor in Michigan.  He and his wife, Faith Pierce, live in Southgate, Michigan.  In late August 2003, they welcomed an out of town visitor, Kendra Huckaby, into their home on Kennebec Drive.  Huckaby intended to stay with the couple for a month, but decided to cut her trip short and return to her father's home in Kentucky.  Therefore, on the morning of September 2, 2003, Huckaby began packing up her white Taurus to leave Michigan.  Around 9:44 a.m., a neighbor, Doris Johnson ("Johnson"), called the Southgate police to report what she interpreted as a home

———————————————

[1]Barton is not a party to this appeal.

invasion or a breaking and entering in progress. Johnson reported that a white female she had never seen before was packing things into a white Taurus parked in front of the Barton/Pierce home on Kennebec Drive.

Defendant officers Terry Priest ("Priest") and David Fobar ("Fobar") responded to the dispatch, arriving in separate vehicles to the Barton/Pierce home at almost the same time. Upon arrival, they encountered Huckaby standing just inside the Barton/Pierce home. The officers gestured for Huckaby to leave the Barton/Pierce home. Huckaby walked out the door, leaving it open behind her, and met the officers on the front porch. There, the officers asked Huckaby who owned the home.[2] Huckaby told the officers that the house belonged to "the Bartons." The officers did not ask for more information, rather they detained Huckaby and placed her in the back of Fobar's police car. They did not handcuff her. The officers then proceeded towards the house, where the screen door was closed but the front door had been left open by Huckaby.

The officers verbally announced their presence at the front door of the home and, receiving no response, entered. Fobar and Priest looked around the first floor of the house and heard footsteps upstairs. As the officers looked for the stairwell, the door to the stairwell opened and Barton and his wife Pierce appeared from upstairs. Barton was wearing a collared shirt and pants. Pierce was wearing a floral top and pajama pants. Barton and Pierce asked the officers what they were doing in their house. The officers informed the couple that they were responding to a report of a possible breaking and entering. Barton explained that he and his wife Pierce owned the home, that no one was breaking into the house, and asked them to please leave. Pierce also informed the officers that Huckaby was their house guest, she was leaving that morning, and that she had a chemical imbalance. The officers refused to leave until some form of identification was provided to prove that in fact the home belonged to Barton and Pierce.

---

[2]The parties dispute what the officers asked Huckaby in front of the Barton/Pierce home. Defendants argue that the officers asked Huckaby who owned the home, to which she only responded "a very sweet man." Additionally, Defendants allege that Huckaby failed to produce identification upon their request. However, for purposes of this appeal, this court interprets the facts as alleged by Plaintiff Huckaby. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 307 (6th Cir. 2005). Accordingly, the facts as alleged by Plaintiff are set forth herein, and we note significant disputed facts in the footnotes.

In response, Barton and Pierce pointed to pictures of the two of them adorning the living room area, including one picture that an officer acknowledged at a later point to be "rather large" and "hanging on the wall." When the officers demanded further identification, Barton asked to go get identification from upstairs. The officers agreed and he headed up the stairs.

As Barton left to go upstairs, Pierce alleges that she asked the officers not to go up to her bedroom, a request to which she understood the officers to agree. Standing at the base of the stairwell, Pierce turned her head to tell her husband to get the mortgage papers as proof of ownership. One of the officers, presumably Fobar, then grabbed her leg and pushed her down the steps, allowing Priest to slip by her and follow Barton up the stairs. Pierce then fell face forward onto the floor, where she was kicked.[3]

Two other officers – Officer Kramer ("Kramer") and Sergeant Cullen ("Cullen") – entered the home shortly after Priest went upstairs. Cullen entered the home just as Fobar went upstairs to assist Priest. Fobar told Cullen to "watch" Pierce, who was sitting in the living room. Pierce waited in the living room until the officers came downstairs with her husband. She stood up once while waiting, and Cullen told her to stay put. Pierce obeyed.

Priest and Fobar came downstairs with a handcuffed Barton. Priest communicated to Cullen that Barton pulled a gun upstairs. In response, Cullen decided that Barton, Pierce and Huckaby should all be transported to the local police station for further questioning. Barton and Pierce, who was not handcuffed, were then led into separate police cars. The officers thereafter re-entered the home to search and secure the premises. Once the officers secured the house, they transported Barton, Pierce and Huckaby to the police station for further questioning. Pierce and Huckaby, booked for possible burglary, were released after five hours of further investigation. The two women returned to the Barton home in Southgate later that evening.

---

[3]Defendant officers dispute these facts as well. They argue that Pierce purposefully obstructed the officers from proceeding up the stairs in furtherance of their investigation. While Pierce alleges that she stood in the stairwell because she understood the officers to agree not to go upstairs, Defendants dispute this fact, and dispute whether Pierce was pushed down the stairs at all.

Pierce and Barton filed the instant § 1983 suit on September 2, 2005.  Huckaby filed her § 1983 suit on September 1, 2006.  The cases were consolidated for purposes of discovery on November 20, 2006.  Defendants filed motions for summary judgment on March 26, 2007.  Plaintiffs filed motions for summary judgment on September 26, 2007.  On April 11, 2008, Judge Denise Page Hood of the Eastern District of Michigan entered an order granting summary judgment to Defendants in the Huckaby case.  Huckaby filed a notice of appeal on May 12, 2008.  On September 19, 2008, the district court entered an order denying Barton and Pierce's motion for summary judgment, and granted in part Defendants' motion for summary judgment.  On October 3, 2008, Barton and Pierce filed a motion for reconsideration and clarification of the district court's opinion on the cross-motions for summary judgment.  On February 10, 2009, the district court granted in part Barton and Pierce's motion for reconsideration, finding that the officers were not entitled to qualified immunity as to Pierce's Fourth Amendment claim for unlawful arrest.  On April 8, 2009, Defendants filed an interlocutory appeal based upon  the denial of qualified immunity as to Pierce's arrest.  This Court consolidated the two cases for appeal on June 24, 2009.  We now consider both the dismissal on summary judgment of Huckaby's unlawful arrest claim and the denial of qualified immunity as to Pierce's unlawful arrest claim.

## II.

This Court has jurisdiction over appeals from final orders of the district court pursuant to 28 U.S.C. § 1291.  Appeals from the district court's denial of qualified immunity are immediately appealable "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  However, "a defendant 'may not appeal a district court's [interlocutory order denying a claim of qualified immunity] insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial.'"  *Hussein v. City of Perrysburg*, 617 F.3d 828, 832 (6th Cir. 2010) (quoting *Johnson v. Jones*, 515 U.S. 304, 319-320 (1995)) (alteration in *Hussein*).  Rather, this court may only review a "purely legal issue" on interlocutory appeal. *Ortiz v. Jordan*, 131 S. Ct. 884, 891 (2011).  Nevertheless, even if there are factual disputes

to the underlying case, where a defendant is prepared to overlook these factual disputes for the purposes of the appeal and interpret the facts in the light most favorable to the plaintiff, this court may address the purely legal issues on interlocutory appeal. *Humphrey v. Mabry*, 482 F.3d 840, 845 (6th Cir. 2007) (citing *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998)).

### III.

Pierce alleges that Defendant officers violated her Fourth Amendment rights when they seized her from her home and transported her to the police station for further questioning. The district court denied Defendant officers' motion for summary judgment based on qualified immunity because it identified a number of disputed material facts which made qualified immunity inappropriate. On appeal, Defendants argue that the district court erred in denying qualified immunity because the court erroneously interpreted the facts on summary judgment in favor of Pierce. However, because these arguments rely upon disputed versions of material fact, we dismiss the appeal for lack jurisdiction. *McKenna v. City of Royal Oak*, 469 F.3d 559, 561 (6th Cir. 2006).

First, Defendants argue that the district court failed to consider the collective knowledge of the officers at the Barton/Pierce home in denying qualified immunity to the officers as to Pierce's claim. They focus upon Pierce allegedly "blocking" the officers who tried to follow Barton upstairs. However, Pierce disputes this fact in both her deposition and her brief. Defendants ignore Pierce's assertion that she pointed to photos in the living room to verify her ownership of the home prior to the officers attempting to follow Barton up the stairs, that the officers indicated they would not follow Barton up the stairs, and that she was pulled out of their way on the stairwell. Just as the district court held, this court cannot consider this argument without acting as a fact-finder.

Second, Defendants argue that the district court improperly considered the facts from "from Pierce's perspective as the homeowner rather than from the investigating officers' perspective as the encounter unfolded." Again, this argument boils down to disputes over issues that the district court found to be material questions of fact. While

the officers point to facts concerning Huckaby's out-of-state plates and the neighbor's tip-off call, they fail to account for Pierce's factual assertions that Barton and Pierce immediately and repeatedly claimed it was their home upon encountering the officers. They also ignore evidence that Pierce was in pajamas, and that Pierce directed the officers' attention to at least one photo of Pierce and Barton hanging on the wall.

Defendants here refuse to concede the facts in the light most favorable to Pierce, and fail to raise a legal issue on appeal that is separate from their interpretation of the disputed facts in a light most favorable to Defendants. *See McKenna*, 469 F.3d at 562 n.2. Because we lack appellate jurisdiction over such factual issues, Defendants' failure to concede these facts precludes the award of qualified immunity. Accordingly we dismiss the officers' appeal from the denial of qualified immunity on interlocutory appeal for lack of jurisdiction.

**IV.**

Huckaby also contends that Defendant officers violated her Fourth Amendment right to be free from unreasonable searches and seizures when they detained her in front of the Barton/Pierce home, transported her to the police station, and kept her there for further investigation for almost five hours. Huckaby argues that the police unlawfully arrested her by transporting her to the station without probable cause. Defendants argue that the neighbor's call, Huckaby's failure to properly answer Defendants' questions in front of the Barton/Pierce home, and the subsequent criminal behavior that occurred in the Barton/Pierce home were sufficient to establish probable cause. However, the officers impermissibly rely upon disputed facts surrounding both the officers' confrontation of Huckaby in front of the home and the events that transpired in the home. In granting Defendants' motion for summary judgment and qualified immunity, the district court erroneously interpreted these factual issues in the light most favorable to Defendants. For this reason, we must reverse.

We review the district court's grant of summary judgment de novo. *Parsons v. City of Pontiac*, 533 F.3d 492, 499 (6th Cir. 2008). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In resolving a summary judgment motion, this court must view the evidence in the light most favorable to Huckaby. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

There are a number of factual disputes central to Huckaby's § 1983 claim, which the district court summarily interpreted in the light most favorable to Defendants on summary judgment. For example, Huckaby alleged in her deposition that neither Officer Fobar nor Officer Priest asked for her identification before detaining her in front of the Barton/Pierce home. As she explained, "[The officers] didn't ask me my name, they didn't ask for a drivers license, they just saw me. They asked if there was anybody in the home. I said the Bartons and then they had me come into the back of the police car." The officers dispute this fact. Additionally, Huckaby claimed that, when the officers asked Huckaby who owned the home, she responded "the Bartons." The officers alleged that she only stated "a very sweet man," which Huckaby denied. In dismissing Huckaby's claim, the district court interpreted the facts surrounding Huckaby's initial interaction with the officers in the light most favorable to Defendants. As the court explained, "Defendants arrested Huckaby, claiming that she gave contradictory and incomprehensible answers to their inquiries, and that she failed to produce identification." In the district court's view, "Plaintiff Huckaby was not obligated to respond to the officers' questions, [but] once she chose to respond her answers made the officers even more suspicious that she may have been involved in a home invasion or other criminal activity." Presumably, the district court interpreted these facts as suggesting that Huckaby provided the wrong answers to the officers. Such a conclusion demonstrates the district court's failure to consider the facts in the light most favorable to Huckaby.

Moreover, the district court failed to interpret the facts presented concerning what transpired inside the Barton/Pierce home in the light most favorable to Huckaby. Pierce stated that she told the officers in her home that Huckaby was their houseguest preparing to return to Kentucky. Moreover, as discussed above, Pierce pointed out

indicia of ownership to the officers in the home, which further bolsters her assertion concerning Huckaby.  The district court failed to even consider these fact in their dismissal of Huckaby's claim, and failed to discuss probable cause at all.  Rather, the district court erroneously accepted Defendants' limited and contradictory version of the facts when determining that Defendants were entitled to summary judgment.  Accordingly, we reverse.

Furthermore, the fundamental factual disputes identified in the record which prevent summary judgment also require this court to reverse the district court's grant of qualified immunity to Defendants on interlocutory appeal.  *See Johnson*, 515 U.S. at 313.  The district court found, and Defendants argue on appeal, that the officers were entitled to qualified immunity because Johnson's tip-off and Huckaby's responses to the officers' questions created a reasonable suspicion to detain Huckaby.  However, this argument depends upon this court accepting Defendants' assertion that Huckaby did not properly answer the officers' questions in front of the Barton/Pierce home.  While Defendants argue that they do concede these facts in their analysis, they nevertheless analyze the facts as though Huckaby's answers to the officers were incorrect and, moreover, that the events that occurred inside the Barton/Pierce home created probable cause.  This analysis completely excludes Pierce's assertion that she immediately told the officers that Huckaby was a houseguest, and fails to account for the corresponding inference that the officers had reason to know Barton and Pierce owned the home. Because, as noted above, these factual assertions are disputed, we also reverse the district court's grant of qualified immunity in the Huckaby case.

The existence of "factual issues genuinely in dispute preclude[s] [the] summary adjudication" of qualified immunity claims on interlocutory appeal. *Ortiz*, 131 S. Ct. at 891; *see also Estate of Carter v. City of Detroit*, 408 F.3d 305, 307 (6th Cir. 2005).  As the Supreme Court explained in *Johnson*, an appellate court is better equipped to address the abstract issues of law raised on qualified immunity interlocutory appeals. 515 U.S. at 317.  Murky questions of fact are best reserved for the district court, which has the resources to address these issues.  *Id.*  Where, as here, the district court fails to interpret

an issue on summary judgment in the light most favorable to the Plaintiff, the questions of law are not "neat" and "abstract" and easily reviewable by the appellate court. *Id*. Accordingly, we cannot determine, on the record presented before us, that the district court properly granted Defendants' motion for summary judgment and qualified immunity in this instance without engaging in the time consuming and wasteful exercise of determining questions of fact on a pretrial record. *See id*. This is not the purpose of appellate review on qualified immunity claims, and we will not do it here concerning either *Pierce* or *Huckaby*. Therefore, we reverse the district court and remand for further proceedings.

Additionally, as to the *Huckaby* case, we alert the district court that there is a distinction between the reasonable suspicion required to detain a suspect under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), and the showing of probable cause required to support a warrantless arrest. *See Parsons*, 533 F.3d at 500-04. Though we abstain from reaching the merits of this issue based upon the record before us, we are nevertheless troubled by the district court's failure to address probable cause in its order granting qualified immunity to Defendants. On remand, we encourage the district court to further address this distinction.

## V.

Huckaby also raised an unlawful entry claim on appeal to this court. Though Barton and Pierce raised an unlawful entry claim before the district court, Huckaby never addressed the issue until her appeal before this court. We may disregard any improper arguments raised in Huckaby's briefs on appeal. *See City of Sterling Heights, Mich. v. United Nat'l Ins. Co.*, 319 F. App'x 357, 366 (6th Cir. 2009) (disregarding any arguments raised in the briefs that were not presented below). Because the unlawful entry claim was not properly raised by Huckaby before the district court, we decline to address it here.

## VI.

For the aforementioned reasons, we dismiss Defendants' interlocutory appeal from the district court's denial of the motion for summary judgment based upon qualified immunity. We reverse the district court's grant of Defendant officers' motion for summary judgment as a matter of law as to Huckaby's Fourth Amendment unlawful seizure claim, and we remand to the district court for further proceedings consistent with our decision.