NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0243n.06

No. 12-1880

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Mar 08, 2013**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FAOUAZ MOURAD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| HOMEWARD RESIDENTIAL, INC., | ) | |
| f/k/a AMERICAN HOME MORTGAGE | ) | OPINION |
| SERVICING, INC., et al., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before:  MARTIN and GILMAN, Circuit Judges; FOWLKES, District Judge.[*]

**RONALD LEE GILMAN, Circuit Judge.**  This case involves a homeowner's challenge to the foreclosure on his residence by the servicer of his mortgage loan.  Faouaz Mourad appeals a district court order granting summary judgment for American Home Mortgage Servicing, Inc. (AHMSI) and dismissing his claims under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Mich. Comp. Laws § 600.3204, as well as his claim for quiet title.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable John T. Fowlkes, United States District Judge for the Western District of Tennessee, sitting by designation.

# I.  BACKGROUND

## A.  Factual background

Mourad borrowed $3,400,000 in 2006 in order to finance the construction of a 17,000-square-foot residence in Northville, Michigan.  Mortgage Electronic Registration Systems, as the nominee for American Brokers Conduit (ABC), was the mortgagee.  In April 2007, Mourad refinanced his mortgage with ABC for $3,702,000.  He represented on his Uniform Residential Loan Application that his gross monthly income was $64,580.  Mourad signed an Adjustable Rate Note, a new mortgage agreement, and several variable-rate disclosure statements.  In 2008, AHMSI, which has since changed its name to Homeward Residential Inc., became the servicer of the refinanced loan.

Under the terms of the refinanced loan, Mourad's minimum required monthly payments were less than the total amount of interest that accrued each month.  The Adjustable Rate Note provided as follows:

> THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT.  DURING THE FIRST 7 YEARS OF THIS NOTE, MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I REPAY MAY BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN 120.000% OF THE ORIGINAL AMOUNT.

Mourad also signed an Adjustable Rate Rider, which explained how the underpayment of interest would be handled:

> During the Initial Period, my minimum required monthly payment will be less than the amount of interest that accrues on the Principal balance of the loan at the Initial Stated Rate.  During the Initial Period, for each month that my monthly payment is less than the amount of interest that accrues on the Principal balance of the loan at the Initial Stated Rate, the Note Holder will subtract the amount of the monthly

payment from the amount of the interest that accrues on the Principal balance of the loan for that month and add the difference to the Principal balance of my loan . . . .

Mourad chose this type of payment plan over several other payment options available to him.

Finally, Mourad signed disclosure statements that reflected increasing payments over the life of the loan. The Adjustable Rate Note initially called for monthly payments of $12,336.98, which did not fully cover the monthly interest. The remaining interest due was added to the principal balance of the loan. After 47 months, the monthly payments were scheduled to increase.

Mourad allegedly contacted AHMSI in the last quarter of 2008 to inquire why the loan balance was increasing. He stopped making mortgage payments in December 2008.

**B.     Procedural background**

In October 2009, after foreclosure proceedings were initiated, Mourad filed a lawsuit against AHMSI in Michigan state court, which AHMSI then removed to federal court. Mourad alleged, among other things, that AHMSI had violated § 1639 of the Truth in Lending Act (TILA). But Mourad filed a notice of voluntary dismissal of this first lawsuit in December 2009, and the district court entered an order dismissing with prejudice Mourad's TILA claims against AHMSI.

On January 8, 2010, a new foreclosure notice was sent to Mourad. Mourad's residence was sold at foreclosure on March 10, 2010. He filed the instant lawsuit in Michigan state court approximately five months later, which AHMSI removed to federal court. On September 10, 2010, Mourad's right to redeem the property expired under Michigan law.

In addition to suing AHMSI in the present action, Mourad filed claims against several other defendants who were never served and were dismissed from the suit without prejudice, as well as against two defendants who were served but who never entered an appearance and against whom

Mourad secured default judgments. He brought six claims against AHMSI, but stipulated to the dismissal with prejudice of all but the following three: (1) violation of TILA, (2) quiet title, and (3) violation of Mich. Comp. Laws § 600.3204.

The parties filed cross-motions for summary judgment. In granting AHMSI's motion, the district court first held that Mourad's TILA claims were barred by res judicata because they involved the same transaction that had been the subject of the first lawsuit, which was dismissed with prejudice. The district court rejected Mourad's argument that the 2010 foreclosure action gave rise to a new TILA claim, reasoning that the 2010 foreclosure related to the 2007 loan refinancing that was the subject of the earlier lawsuit. Next, the district court dismissed the quiet-title claim, holding that Mourad had failed to demonstrate any fraud, deceit, or intentional violation on the part of AHMSI that would allow the court to exercise its equitable powers. Finally, the district court held that Mourad had abandoned his wrongful-foreclosure claims under Mich. Comp. Laws § 600.3204 by failing to present supporting evidence. The district court alternatively found that Mourad lacked standing to challenge the validity of the foreclosure because the foreclosure sale had taken place and the redemption period had expired. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review de novo a district court's grant of summary judgment. *Huckaby v. Priest*, 636 F.3d 211, 216 (6th Cir. 2011). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.    TILA**

Mourad claims that the refinanced loan issued in April 2007 violated TILA.  "TILA requires that creditors make certain disclosures as to the terms of lending arrangements and provides for civil liability for failure to comply with its provisions."  *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1109 (6th Cir. 2012) (per curiam) (internal quotation marks omitted).  Mourad claims that the refinanced loan was a negatively amortizing loan, which is generally barred under 15 U.S.C. § 1639(f).  He also alleges that AHMSI violated 15 U.S.C. § 1639(h), which prohibits a creditor from extending credit without regard to a consumer's ability to repay.  The district court held that the TILA claims were barred by res judicata because Mourad had raised a claim under § 1639 involving the same loan transaction in his prior suit, which was dismissed with prejudice.

On appeal, Mourad argues that AHMSI engaged in "multiple violations" of TILA that give rise to "multiple recoveries" under 15 U.S.C. § 1640.  Mourad does not cite the specific subsection he relies on for such a proposition, but he presumably is referring to § 1640(g), titled "Recovery for multiple failures to disclose."  He first argues that AHMSI's practice of collecting less than the full amount of interest due after the dismissal of his first lawsuit constituted "multiple violations" of § 1639.  Second, he argues that he requested assistance from AHMSI in late 2008 regarding his loan and that AHMSI's "fail[ure] to address negative amortization" constituted a separate violation.

Mourad does not explain how either action constitutes a "failure to disclose."  Moreover, a comparison of the complaints filed in the first and second lawsuits reveals that Mourad's TILA

claims in both actions relate exclusively to the April 2007 refinancing. (*Compare* No. 2:09-cv-14607, Compl. ¶¶ 8-21 ("In 2007, . . . Plaintiff refinanced his mortgage loan with non-party American Brokers Conduit . . . ."), *with* R. 1-2, Compl. ¶¶ 15-23 ("On April 20, 2007, Plaintiff refinanced . . . the Property with Defendant, American Conduit.")) Mourad's previous TILA claims based on the April 2007 transaction were dismissed with prejudice. Any subsequent claim in the current lawsuit based on the same set of facts is barred by res judicata. *See United States v. One Tract of Real Prop.*, 95 F.3d 422, 426 (6th Cir. 1996) (holding that "a dismissal with prejudice operates as a rejection of the plaintiff's claims on the merits and res judiciata precludes further litigation").

Section 1640(g) does not provide Mourad with any relief in this case. That section provides as follows: "The multiple failure to disclose to any person any information required under this part . . . shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries." Section 1640(g), therefore, limits a consumer to a single recovery for multiple failures to disclose in connection with a single loan transaction, but "provides consumers *additional* recoveries for *post-judgment* TILA violations." *Vallies v. Sky Bank*, 591 F.3d 152, 159 (3d Cir. 2009) (emphases added). The TILA claims in both of Mourad's suits relate to the same transaction—the April 2007 extension of credit. Mourad did not recover damages in his first lawsuit, and § 1640(g) does not help him in this second suit.

Furthermore, an action under TILA can be brought only against creditors or their assignees. 15 U.S.C. §§ 1640-1641. TILA defines a creditor as someone who both regularly extends consumer credit and is initially due payment for debt arising from a consumer-credit transaction. 15 U.S.C.

§ 1602(g). This definition does not include loan servicers like AHMSI. Servicers are also excluded from the definition of assignees "unless the servicer is or was the owner of the obligation." *Id.* § 1641(f)(1). Mourad does not dispute that AHMSI was merely the servicer, and not the owner, of the loan. AHMSI is therefore not liable under TILA. *See Coyer*, 701 F.3d at 1109 (holding that the plaintiffs failed to state a TILA claim against their mortgage servicer for alleged misrepresentation and fraud at the time they entered the transaction because the servicer was not a party to that transaction and instead bought the mortgage on the secondary market). In sum, we affirm the district court's dismissal of Mourad's TILA claims.

## C.    Quiet title

Mourad next alleges that AHMSI does not have a valid security interest in the property because it failed to disclosure material facts when the note and mortgage were executed. He argues that AHMSI made false and misleading statements that caused him to obtain a negatively amortizing loan. But the district court found that there was no evidence of fraud, deceit, or intentional violation and that the relevant aspects of the refinanced loan were clearly disclosed to Mourad.

As an initial matter, AHMSI was merely the servicer of the loan and had no part in creating the mortgage documents or making the disclosures to Mourad. *See, e.g.*, *Coyer*, 701 F.3d at 1108 (concluding that the plaintiffs failed to state a fraud claim against their mortgage servicer by alleging fraud in relation to statements and misrepresentations made at the time they entered into the mortgage because the servicer was not a party to that transaction). AHMSI has, moreover, submitted relevant refinancing documents that clearly disclose the terms of the loan and bear Mourad's signature.

Mourad concedes that AHMSI's copies of the disclosure documents legibly disclose the terms of the loan, but argues that the copies given to him were incomprehensible. In support of his argument, Mourad submitted unsigned documents that are indeed not written in English. Where these documents came from and how they were created is not reflected in the record, but they do not negate the fact that AHMSI submitted disclosure documents that not only are readable but contain Mourad's signature. Contract signatories are deemed to know and are held to the terms of the contract. *Scholz v. Montgomery Ward & Co.*, 468 N.W.2d 845, 848-49 (Mich. 1991) ("The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge." (internal quotation marks omitted)). Mourad does not dispute that he actually signed these documents. He is therefore deemed to be aware of their content. Based on these disclosures, we cannot say that Mourad received any false or misleading information about his refinanced loan. We therefore affirm the district court's dismissal of the quiet-title claim.

**D.      Wrongful-foreclosure claims under Mich. Comp. Laws § 600.3204**

Mourad has made different arguments with respect to his foreclosure claims at various points in this litigation. His complaint generally alleges insufficient notice of the foreclosure. In his response to AHMSI's motion for summary judgment, he reiterated his allegation that AHMSI failed to give him proper notice of the foreclosure and argued that AHMSI had not produced a certified mailing receipt. But Mourad produced no other evidence in support of his insufficient-notice claim. He also added a new claim that the mortgage contract was void and that AHMSI therefore could not foreclose.

On appeal, Mourad attacks the district court's alternative reason for dismissing this claim (lack of standing), revives his allegation that he was not given proper notice as required by Michigan

law, and appears to add a claim that he was eligible for a loan modification, automatically precluding foreclosure. In his reply brief, Mourad further contends that he was never informed of his right to seek modification of the loan, that under Michigan law a lender "shall not commence proceedings" without giving notice, and that "[t]here can be no redemption period if the party cannot commence proceedings."

### 1. Mourad has not presented evidence to support his insufficient-notice claims

Mourad has failed to come forward with competent evidence supporting his allegations of insufficient notice of foreclosure. Summary judgment for the movant is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a motion for summary judgment is made and supported by competent evidence, the nonmovant may not rest on his or her pleadings, but must come forward with affidavits or other admissible evidence setting forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

AHMSI presented evidence showing that Mourad was mailed a foreclosure notice and that such a notice was posted on the property. As the party responding to a properly supported motion for summary judgment, Mourad had the burden to set forth specific facts showing a genuine issue for trial. But Mourad offered no evidence to refute AHMSI's affidavits. He simply argued that AHMSI's evidence was insufficient and that his mortgage was void *ab initio*.

On appeal, Mourad contends that his verified complaint constitutes sufficient evidence to create a genuine dispute of material fact. We recognize that a "verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment," *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008), to the extent that it is based on personal knowledge, *Hooks v. Hooks*,

771 F.2d 935, 945-46 (6th Cir. 1985). The problem, however, is that Mourad's verified complaint does not set forth any specific facts about the sufficiency of the foreclosure notices. Mourad's complaint instead alleges insufficient notice at a high level of generality: he alleges that "foreclosure [was initiated] without giving required notices" and "[t]hat in addition to the illegal conduct outlined above, the foreclosure notice herein fail [sic] to comply with" Michigan foreclosure law. Mourad does not allege that AHMSI failed to mail or post a notice of foreclosure. Nor does he explain the ways in which the notices allegedly failed to comply with Michigan foreclosure law.

Moreover, to constitute evidence sufficient to defeat a motion for summary judgment, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Mourad alleges that, "[u]pon information and belief," foreclosure was initiated "without giving required notices," which indicates that the allegations in the complaint go beyond Mourad's personal knowledge and extend to matters within his belief. His belief, however, does not meet the evidentiary standard set forth in Rule 56(c)(4) of the Federal Rules of Civil Procedure. *See id.*; *see also Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (holding that the affiant's "statement . . . based upon his 'belief' . . . did not demonstrate the personal knowledge required by" Fed. R. Civ. P. 56(c)(4)). Accordingly, Mourad's verified complaint does not raise a genuine dispute of material fact concerning the alleged wrongful foreclosure.

### 2. *Whether Mourad has "standing" to challenge the foreclosure*

Mourad spends the bulk of his brief on appeal addressing the district court's alternative reason for granting AHMSI's motion for summary judgment on the insufficient-notice claims, which was based on his purported lack of standing. Under Michigan law, property owners are generally

not permitted to assert claims related to a foreclosed property after the redemption period has expired. *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942) (explaining that, under Michigan law, all of plaintiffs' rights in and to the property are extinguished after the expiration of the redemption period). We have considered this point of law in several recent, unpublished decisions and have concluded that the use of the term "standing" in this context, as the district court did, is misleading. *See, e.g.*, *Munaco v. Bank of Am.*, No. 12-1325, 2013 WL 362752, at *2 n.2 (6th Cir. Jan. 31, 2013) (collecting cases explaining the confusion about this concept and noting that "[u]se of the term 'standing in this context is misleading'").

Article III standing in this case is satisfied. *See El-Seblani v. IndyMac Mortg. Servs.*, No. 12-1046, 2013 WL 69226, at *2 (6th Cir. Jan. 7, 2013) (finding Article III standing in a Michigan wrongful-foreclosure case "when there is a concrete, particularized, and actual injury that is fairly traceable to the challenged action of the defendants and capable of being redressed by a favorable decision" (internal quotation marks omitted)).

With respect to statutory standing, there is disagreement over whether a Michigan plaintiff asserting a wrongful-foreclosure claim after expiration of the redemption period in fact lacks standing or instead loses his or her case on the merits, and we have concluded that the issue "does not turn on the standing doctrine." *Houston v. U.S. Bank Home Mortg. Wisc. Servicing*, No. 11-2444, 2012 WL 5869918, at *4 (6th Cir. Nov. 20, 2012). We therefore disagree with the district court's ruling that Mourad lacked standing. Nevertheless, because Mourad's insufficient-notice claims fail for the other reasons discussed above, we affirm the dismissal of this claim.

### 3.  *Mourad's eligibility for a loan modification*

"When a lender wishes to foreclose by advertisement on a borrower's principal residence, it must provide the borrower with a notice designating a person whom the borrower may contact to negotiate a loan modification." *Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F.3d 949, 951 (6th Cir. 2012), *abrogated by Kim v. JPMorgan Chase Bank, NA*, — N.W.2d —, 2012 WL 6858059 (Mich. Dec. 21, 2012). Mourad's argument in the district court that he was not informed of his right to seek a modification of his loan was limited to a brief allusion to this issue during the hearing on the cross-motions for summary judgment. This is inadequate to preserve the claim on appeal. *See, e.g.*, *Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 326 (6th Cir. 1988) (finding that a "vague reference" to an argument before the district court was insufficient to preserve the issue for appeal).

In any event, AHMSI presented unrefuted evidence that Mourad was mailed a notice of foreclosure that stated:

> Pursuant to MCL 600.3205a(1): Within 14 days after this notice is sent, you may request a meeting with [AHMSI's law firm] to attempt to work out a modification of the mortgage loan to avoid foreclosure. . . . If an agreement to modify the mortgage loan is reached . . . , the mortgage will not be foreclosed. If an agreement to modify the mortgage loan is not reached and it is determined that you meet the criteria for a modification under MCL 600.3205c(1) and foreclosure under this chapter is not allowed under MCL 600.3205c(7), the foreclosure of the mortgage will proceed before a judge instead of by advertisement.

This notice effectively refutes Mourad's argument that he was not served with notice of his right to seek a loan modification.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

-12-