RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ALISON KAREEM,

 *Plaintiff-Appellant*,

 *v.*

⎬ No. 23-3330

CUYAHOGA COUNTY BOARD OF ELECTIONS; FRANK
LAROSE, Ohio Secretary of State; MICHAEL C.
O'MALLEY, Cuyahoga County Prosecuting Attorney,

 *Defendants-Appellees*.

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:20-cv-02457—David A. Ruiz, District Judge.

Decided and Filed:  March 14, 2024

Before:  BATCHELDER, CLAY, and GIBBONS, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Curt C. Hartman, THE LAW FIRM OF CURT C. HARTMAN, Cincinnati, Ohio,
Christopher P. Finney, FINNEY LAW FIRM LLC, Cincinnati, Ohio, for Appellant.  Mark R.
Musson, CUYAHOGA COUNTY, Cleveland, Ohio, for Cuyahoga County Appellees.  Benjamin
M. Flowers, Mathura J. Sridharan, OFFICE OF THE OHIO ATTORNEY GENERAL,
Columbus, Ohio, for Appellee Frank LaRose.

 CLAY, J., delivered the opinion of the court in which BATCHELDER and GIBBONS,
JJ., joined.  GIBBBONS, J. (pg. 13), delivered a separate concurring opinion.

---

**OPINION**

---

CLAY, Circuit Judge.   Plaintiff Alison Kareem appeals the district court's grant of summary judgment to Defendants Ohio Secretary of State Frank LaRose, the Cuyahoga County Board of Elections, and Cuyahoga County Prosecuting Attorney Michael C. O'Malley.   Kareem sued Defendants on the grounds that two state election laws, Ohio Rev. Code §§ 3501.35(A)(4) and 3599.20, violated her free speech rights under the First Amendment by prohibiting her from displaying her marked ballot to others.   The district court granted Defendants' motions for summary judgment because it concluded that Kareem lacked Article III standing.   For the reasons set forth below, we **REVERSE** the district court's order and **REMAND** for further proceedings in accordance with this opinion.

## I. BACKGROUND

On October 20, 2020, while voting in the November 2020 general election, Plaintiff Alison Kareem took a photograph with her marked ballot, colloquially referred to as a "ballot selfie."   According to Kareem, she wished to display this photograph online to mobilize support for her preferred candidates.   However, she did not display the photograph, nor has she displayed any ballot photographs in subsequent elections, because of Ohio laws that prohibit the display of marked ballots.   "If state law did not prohibit the posting or publication of a ballot selfie," Kareem states that she "would have posted on-line and disseminated the ballot selfie from October 2020" and "taken, posted, and disseminated a ballot selfie at subsequent elections."   Kareem Decl., R. 28, Page ID #570.[1]

The state laws to which Kareem refers are Ohio Rev. Code § 3501.35(A)(4) and Ohio Rev. Code § 3599.20, both of which carry a potential term of imprisonment.   Section 3501.35(A)(4) prohibits "[e]xhibit[ing]" a "ballot which the elector intends to cast."   Ohio Rev.

---

[1]Sometime in 2015 or 2016, Kareem also temporarily posted a subsection of a ballot pertaining to a medical marijuana ballot initiative.   However, Kareem quickly took down the photograph upon learning that ballot photographs were illegal under Ohio law.

Code. § 3501.35(A)(4).  A violation is a first-degree misdemeanor, *see id.* § 3599.40, and is punishable by up to six months' imprisonment, *see id.* § 2929.24.  Section 3599.20 prohibits an elector from "allow[ing] the elector's ballot to be seen by another" with the "apparent intent[]" to reveal "how the elector is about to vote."  *Id.* § 3599.20.  A violation of § 3599.20 is a felony in the fifth degree, *id.*, which is punishable by up to twelve months' imprisonment, *id.* § 2929.14(A)(5).

On October 30, 2020, Kareem filed a complaint against Ohio Secretary of State Frank LaRose, as well as the Cuyahoga County Board of Elections and Cuyahoga County Prosecuting Attorney Michael C. O'Malley, claiming that Ohio Rev. Code § 3501.35(A)(4) and Ohio Rev. Code § 3599.20 restricted her core political speech in violation of the First Amendment.  For this alleged harm, Kareem sought declaratory relief, injunctive relief, and nominal damages.

Subsequently, both Kareem and Defendants moved for summary judgment on various grounds.  Among other possible grounds for summary judgment, Defendants argued in their motions that Kareem lacked standing.  Without reaching the merits of Kareem's claim, the district court agreed that Kareem lacked standing and granted Defendants' motions for summary judgment on this basis.  Kareem filed a timely notice of appeal on April 18, 2023, and she now argues that this Court should reverse the grant of summary judgment to Defendants and remand to the district court for further proceedings.

## II.  DISCUSSION

### A.  Standard of Review

We review a grant of summary judgment for lack of standing *de novo*.  *See Hammoud v. Equifax Info. Servs., LLC*, 52 F.4th 669, 673–74 (6th Cir. 2022).  Summary judgment is proper when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reviewing Defendants' motions for summary judgment, "this [C]ourt must view the evidence in the light most favorable to" Kareem.  *See Huckaby v. Priest*, 636 F.3d 211, 216 (6th Cir. 2011).

A plaintiff must prove Article III standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the summary judgment stage, a plaintiff must allege "specific facts" that create a genuine dispute of material fact regarding each requirement of standing. *See id.* (citation omitted). The plaintiff's allegations "will be taken to be true" for purposes of summary judgment, although at the trial stage, the allegations "must be supported adequately by the evidence." *Id.* (internal quotation marks and citation omitted).

## B. Analysis

The sole issue on appeal is Article III standing, which requires a plaintiff to "have suffered an 'injury in fact,'" that was caused by "the conduct complained of," and which "a favorable decision" is likely to redress. *Id.* at 560–61 (citations omitted). The injury in fact requirement establishes a plaintiff's "personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Accordingly, the injury must be "actual or imminent," rather than "'conjectural' or 'hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560).

Defendants' primary argument is that Kareem cannot establish an imminent injury to her free speech rights based on Ohio's ballot laws. Although these laws have not been enforced against Kareem, the Supreme Court has emphasized that a law need not be enforced against a speaker to pose a threat to her speech. *See id.* Instead, Kareem can establish an imminent injury in fact under the First Amendment by demonstrating (1) an intent to engage in "expression that the Free Speech Clause arguably protects," (2) that this expression is arguably prohibited by Ohio's ballot laws, and (3) that there exists a "credible threat of enforcement" for engaging in that expression. *See Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022) (per curiam) (citing *Driehaus*, 573 U.S. at 159, 162).

Only the third of the requirements to establish an imminent injury in fact is meaningfully at issue in this case. On appeal, Defendants do not dispute that displaying a photograph of a marked ballot is prohibited by Ohio's laws—in fact, they have publicly said that the laws cover as much. Likewise, it is at least arguable that the display of a photograph of a marked ballot is a

form of political expression that implicates free speech interests. And Kareem submitted a declaration stating that she took just such a photograph during the 2020 general election, which she wished to display, and the same as to similar photographs in subsequent elections. Her ability to establish an injury in fact therefore turns on whether she can demonstrate that her decision not to display her marked ballots is based on a credible threat that Ohio's ballot prohibitions could be enforced against her.

This is not the first time we have considered the credible-threat standard. In *McKay v. Federspiel*, our Court discussed cases in which plaintiffs had demonstrated a sufficiently credible threat of enforcement to establish an injury under the First Amendment's Free Speech Clause. 823 F.3d 862, 869 (6th Cir. 2016). We observed that while allegations of "a subjective chill" alone were not enough to establish a credible threat of enforcement, prior cases have taken into account "some combination of" a "history of past enforcement against the plaintiff[] or others," "enforcement warning letters," "an attribute of the challenged statute that makes enforcement easier or more likely," and "a defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Id*.

In subsequent cases, we have stressed that these "factors are not exhaustive, nor must each be established." *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021). Because these factors are not exhaustive, any analysis must also be guided by certain general considerations that pre-enforcement challenges raise in the First Amendment context. In particular, because "self-censorship" is "a harm that can be realized even without an actual prosecution," the rationale for pre-enforcement challenges applies with particular force to the First Amendment. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988). At the same time, this Court must be wary of permitting pre-enforcement suits based only on "subjective apprehension and a personal (self-imposed) unwillingness to communicate," which lack the sufficiently adverse interests necessary to establish standing. *See Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 610 (6th Cir. 2008) (citation omitted).

With these principles in mind, we turn to Kareem's case. She argues that there is a credible threat of enforcement of Ohio's ballot laws for several reasons. She notes that Defendants have refused to disavow the prohibition against displaying marked ballots. Far from

that, she emphasizes that Defendants have repeatedly advised the public that the display of marked ballots is illegal.  Additionally, she argues that in at least one instance, Defendants have invoked these laws to order an individual to remove a marked ballot from display.  Based on this, she contends that her fear of enforcement is not "imaginary," *Driehaus*, 573 U.S. at 160 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979)), and that her unwillingness to display her marked ballot is not "self-imposed," *Morrison*, 521 F.3d at 610 (citation omitted).  We address each argument in turn.

i.

This Court has previously pointed to "a defendant's refusal to disavow" a law to determine whether there exists a credible threat of enforcement.  *McKay*, 823 F.3d at 869.  Kareem argues that rather than disavow Ohio's ballot laws, Defendants have instead done the exact opposite:  They have warned voters a number of times that displaying a marked ballot is illegal under Ohio law.

Several pieces of evidence support Kareem's argument.  In 2016, the Cuyahoga County Board of Elections cautioned voters via social media that "[w]e love seeing all the voter pride, but know it is illegal in OH to post a picture of your voted ballot!"  Ex. 3 to Perlatti Dep., R. 26-1, Page ID #431.  Additionally, the Ohio Secretary of State has communicated the message to election officials overseeing polling locations, who were instructed that ballot prohibitions, such as those against "showing a voted ballot," are "punishable as a misdemeanor or felony."  Ex. 4 to Perlatti Dep., R. 26-1, Page ID #432.  And from 2016 to 2020, when Board representatives were interviewed by the media, they time and again told voters that posting photos of their marked ballots was against the law.

In comparable cases, this Court has concluded that plaintiffs credibly feared enforcement.  In *Platt v. Board of Commissioners on Grievances & Discipline of the Ohio Supreme Court*, we held that a prospective state judicial candidate had standing to bring a pre-enforcement challenge to campaign restrictions under the First Amendment.  769 F.3d 447, 452 (6th Cir. 2014).  We determined that the candidate's "asserted fear [was] credible" because the campaign restrictions clearly prohibited the activities in which he sought to engage.  *Id.*  We also found that his fear

was bolstered by the state's refusal to disavow enforcement, as well as the fact that individuals could bring grievances to the attention of the disciplinary board.[2]   *Id.* (citations omitted). Similarly, in *Green Party of Tennessee v. Hargett*, we concluded that the plaintiffs had standing to bring a pre-enforcement challenge to a law requiring political parties to submit a "loyalty oath" affidavit.   791 F.3d 684, 695–96 (6th Cir. 2015).   Although the "defendants ha[d] not enforced or threatened to enforce this statute against" *any* political party, we determined that it carried a sufficiently credible threat of enforcement to establish a free speech harm since the state "ha[d] not explicitly disavowed enforcing [the law] in the future."[3]   *Id.* at 696; *cf. Babbitt*, 442 U.S. at 302 (concluding that a set of plaintiffs had standing to bring a pre-enforcement challenge because their "fear of criminal prosecution" was not "imaginary or wholly speculative" and the "State ha[d] not disavowed" the law).   Given that, it was reasonable for the plaintiffs to fear violating the law.   By that same logic, Kareem's fear of enforcement is credible since Ohio's ballot laws clearly prohibit her from displaying her marked ballots.   And her case goes further than either *Platt* or *Hargett* with respect to disavowal:   Defendants in this case have not only failed to disavow enforcement, they have also publicly *doubled down* on the ballot prohibitions. In light of such messaging, a voter like Kareem would understandably fear posting a ballot photograph.

In ruling to the contrary, the district court relied heavily on *McKay*, including to conclude that messages addressed to the public were not enough to establish the existence of a credible threat of enforcement.   In that case, we held that a plaintiff lacked standing to challenge a

---

[2]Defendants characterize this as akin to a private right of action or citizen suit provision and try to distinguish *Platt* on this basis.   Not so.   In the case of a grievance raised by an individual, the rule in *Platt* required the disciplinary board to independently review the allegations to determine whether they were supported by evidence, upon which the board would launch an investigation.   *See Filing a Grievance*, The Supreme Court of Ohio & The Ohio Judicial System (Aug. 22, 2014), https://web.archive.org/web/20140822001136/ http://www.supremecourt.ohio.gov/DisciplinarySys/odc/complaint.asp.   We note that given the relatively public nature of ballot photographs displayed online and the ease of taking a screenshot of another's ballot photograph, there is a related risk in this case that individuals could direct a ballot photograph to the attention of the County Board of Elections and other Defendants.

[3]The district court distinguished *Hargett* because it involved compelled speech, rather than a speech restriction.   However, no authority supports that the standing analysis differs for speech restrictions and compelled speech.   The "right not to speak" is a "corollary" of the "freedom of speech," *Wilkins v. Daniels*, 744 F.3d 409, 414 (6th Cir. 2014), both of which require an actual or imminent First Amendment harm.   *Cf. Riley v. Nat'l Fed'n of Blind of North Carolina, Inc.*, 487 U.S. 781, 796 (1988) (holding that the "difference between compelled speech and compelled silence . . . is without constitutional significance").

courthouse's policy of requiring judicial permission to use electronic devices. *McKay*, 823 F.3d at 869. But *McKay* is distinguishable from Kareem's case in important respects.

Most importantly, the policy in *McKay* permitted individuals to seek judicial permission to use electronics, while the Ohio laws Kareem challenges contain no such identifiable exemptions. *See id*. Although McKay claimed a right to use electronics in the courtroom, he had never sought judicial permission at all. *Id.* In part because he had never even attempted to seek permission to use electronics, and had not once been denied such permission, McKay could not establish that any "legally cognizable interest" he held in the use of electronics had been injured. *See Green Party of Tenn. v. Hargett*, 767 F.3d 533, 543 (6th Cir. 2014) (defining an injury in fact as "an injury to a legally cognizable interest"). Instead, unlike Kareem's challenge, McKay's challenge was premature and his fear of enforcement was not credible. *See McKay*, 823 F.3d at 869–70; *cf. Morrison*, 521 F.3d at 610 (involving a dismissal based on standing where school policy contained exceptions).

Consider, too, the nature of the restrictions. While Kareem challenges criminal laws, McKay challenged a flexible administrative order promulgated by several judges. *See McKay*, 823 F.3d at 864. The administrative order left open the question of discipline, tempering the fear of enforcement. *See id.* at 869 (noting signs around the courthouse stated that electronics use without permission "May Result in Contempt Sanctions"). In fact, the sheriff's deputies around the courthouse could not so much as confiscate electronic devices or even detain individuals without direction from a judge. *Id.* at 870. But a violation of Ohio's ballot laws is certainly a felony and a first-degree misdemeanor, *see* Ohio Rev. Code. §§ 3501.35(A)(4) and 3599.20, and the threat of such punishment significantly heightens the risk of chilled expression.

The district court also placed great weight on a remark by the Board's current director that ballot photographs are not something that the Board has monitored or responded to since 2019. However, nothing in the record supports that the Board has taken this position publicly. Quite to the contrary—since 2019, the Board has continuously told voters like Kareem that photographs of marked ballots are prohibited under Ohio law. At a minimum, the director's non-public statements would certainly not bear at all on Kareem's standing to bring her backwards-looking suit for nominal damages since she was previously unaware of the director's

unpublicized statements, which therefore could not bear on the credibility of her fear of prosecution.

In any event, other parts of the director's testimony yield a far more mixed conclusion about the Board's enforcement policy. For example, when asked whether the Board would "ignore somebody posting a picture of their voted ballot," the director said, "I did not say that." Perlatti Dep., R. 26-1, Page ID #389. Instead, he testified that if the Board discovered a photograph of a marked ballot, it would "deal with [it] on a case-by-case basis." *Id.* at Page ID #389–90. Viewing this evidence in the light most favorable to Kareem, as we must at the summary judgment stage, the Board has not rejected the likelihood of enforcement. *See Huckaby*, 636 F.3d at 216.

ii.

Kareem points to additional evidence supporting a credible threat of enforcement. She alleges at least one past instance of enforcement by Defendants, as well as a possible second instance. Although past enforcement is not necessary to establish a credible threat of enforcement, it "is good evidence that the threat of enforcement is not chimerical." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015) (quoting *Driehaus*, 573 U.S. at 164). Therefore, some evidence of past enforcement, along with allegations of a subjective chilling of speech, has been sufficient to establish an injury in fact under the First Amendment. *See McKay*, 823 F.3d at 869.

Kareem first points to an instance of enforcement by the Cuyahoga County Board of Elections. In that instance, the former director of the County Board, who remained in his post until 2019, told an individual to take down a ballot photograph that had been posted online. In response to the director's order, the individual removed the ballot photograph from display.

The district court gave little weight to this instance of removal because it "was never referred for prosecution or subject to any threat of enforcement proceedings." Mem. Op. and Order, R. 40, Page ID #1071. However, a directive by an official can establish a credible threat of enforcement because it "initiates the formal [enforcement] process, which itself is chilling." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019). This very instance illustrates

the point. The enforcement process did not need to proceed further precisely because the Board's directive coerced the individual to remove the ballot from display. Having been ordered to remove the photograph, the individual complied, thereby chilling potential expression.

Kareem also alleges a possible second instance of enforcement. In 2019, a local newspaper reported that a city council candidate had taken down photographs of his ballot from online after he was "told last week that he had violated state law." Ex. 8 to West Dep., R. 26-2, Page ID #519. The district court gave no weight to this incident because nothing in the record revealed "who told the person that his actions could violate Ohio law." Mem. Op. and Order, R. 40, Page ID #1071 n.3. Regardless of who this person might be, this incident demonstrates that Ohio's election laws are deterring others from displaying their ballots, casting doubt on the notion that Kareem's decision not to display hers is personal to her alone. *See Morrison*, 521 F.3d at 610. What's more, Defendants arguably ratified the incident. As the article notes, and as the district court failed to address, "[w]hen asked to comment" on the candidate's removal of the ballot photographs, Defendant "Secretary of State Frank LaRose's office sent" the newspaper a copy of the "law that prohibits voters from showing their ballots to anyone." Ex. 8 to West Dep., R. 26-2, Page ID #520. A voter reading about the Secretary of State's response would reasonably assume that the State agreed with the candidate's removal of the photographs.

iii.

In other cases, a more extensive history of past enforcement might be required. But, in this case, we are mindful that a "lack of discipline . . . could just as well indicate that speech has already been chilled." *Schlissel*, 939 F.3d at 766. That point applies with particular force to the laws Kareem challenges, which punish the display of a marked ballot with up to twelve months' imprisonment. *See* Ohio Rev. Code § 2929.14(A)(5).

Under these terms, deciding not to display a ballot photograph may appear to a voter to be a modest price to pay to avoid criminal punishment. Yet that "modest" trade may be driving Kareem and others to forego constitutionally protected expression. Kareem's pre-enforcement challenge is particularly appropriate in such a scenario. *See Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (noting that a criminal statute challenged under the First Amendment may have a

particularly latent threat of enforcement "when the gains are slight" since "most people are frightened" of the punitive costs); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (noting that Article III jurisdiction over a pre-enforcement challenge may be proper where "the threat-eliminating behavior was effectively coerced").  Along with the other factors discussed above, the punishment for displaying a ballot photograph contributes to the credibility of Kareem's fear.

We need not decide whether any of these factors alone would be sufficient to establish an injury in fact.  The point is only that combined do they contribute to a sufficiently credible threat of enforcement in Kareem's case.  On this record, an individual deciding whether to display a photograph of his or her marked ballot must do so in light of the following:  a law that punishes revealing one's marked ballot with imprisonment, repeated statements by Defendants that posting photographs of a marked ballot is illegal, no evidence that Defendants have publicly disavowed these statements, and at least one past instance in which the Board has ordered an individual to remove a ballot from display.  Under these circumstances, Kareem demonstrates more than a "subjective apprehension and a personal (self-imposed) unwillingness" to post a ballot photograph.  *Morrison*, 521 F.3d at 610 (citation omitted).  Therefore, she has alleged an injury in fact at the summary judgment stage.

Defendants do not address in their appellate briefing whether Kareem satisfies the causation and redressability elements of standing.  We find that she does.  She can establish causation because the alleged violation of her First Amendment rights is "fairly traceable" to each of the three defendants, *see Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009) (citation omitted), all of whom play a role in enforcing the ballot display prohibitions. *See* Ohio Rev. Code § 3501.05(N)(1) (delineating Ohio Secretary of State's and county prosecuting attorney's roles); *id.* § 3501.11(J) (explaining the Board of Election's role in investigating violations of Ohio's election laws).  The same is true for redressability, since the relief Kareem has requested is substantially likely to remedy her alleged injury. *See Davis v. Detroit Pub. Schs. Cmty. Dist.*, 899 F.3d 437, 443 (6th Cir. 2018) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)).  Her request for nominal damages redresses her alleged retrospective harm, *see Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021), and her

request for injunctive and declaratory relief redresses her alleged prospective harm in future elections. Based on this, Kareem has standing to bring her suit.

This is to say nothing of the merits of Kareem's case. Whether the display of a ballot photograph is protected by the First Amendment will be for the district court to decide. We simply conclude that Kareem should have her day in court.

## III. CONCLUSION

Because Kareem has demonstrated a credible threat of enforcement of Ohio Rev. Code §§ 3501.35(A)(4) and 3599.20, she satisfies the injury in fact requirement of Article III standing. Likewise, Kareem also meets the causation and redressability requirements. Therefore, we **REVERSE** the grant of summary judgment to Defendants for lack of standing and **REMAND** to the district court for further proceedings. Because the district court did not reach the merits of Kareem's First Amendment claims, it should have the first opportunity to do so on remand.

---

**CONCURRENCE**

---

JULIA SMITH GIBBONS, Circuit Judge, concurring.  Based on the record before us, I agree that Alison Kareem established a credible fear of enforcement of Ohio's "ballot selfie" laws sufficient to meet Article III's standing requirement.  I write separately to emphasize that this is an extremely close call, and to further explain why Kareem has surpassed this barrier to suit.

Here, Kareem's fear of enforcement stemmed not just from the presence of the laws on the books.  *See Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 609 (6th Cir. 2008).  Rather, Kareem pointed to multiple instances where Defendants used the existence of these laws to discourage citizens from engaging in the prohibited conduct.  Although not directed specifically at Kareem, Defendants' repeated references to the illegality of ballot selfies were designed to raise awareness of the threat of criminal penalties for those who did not comply with the prohibition.[1]  These instances thus generated a stronger threat of enforcement than the signs contemplated in *McKay v. Federspiel*, which essentially made individuals seeking to use electronics in courtrooms aware that advanced judicial approval was required.  823 F.3d 862, 869 (6th Cir. 2016).

Similarly, although Defendants had not previously initiated criminal proceedings against other Ohioans for posting ballot selfies, I find convincing Judge Clay's conclusion that Defendants' previous use of an "implicit threat of [criminal] punishment" to cudgel an individual to remove his or her social media post suffices to demonstrate an instance of past enforcement that supports Article III standing.  *Speech First, Inc., v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019).

For the foregoing reasons, and those detailed in Judge Clay's opinion, I concur.

---

[1]In one instance, Defendants utilized their presence on social media, where ballot selfies are likely to be circulated, to remind users of the selfies' illegal status.