RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0332p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CHRISTINE MARAIS,

        *Plaintiff-Appellant*,

    *v.*

CHASE HOME FINANCE LLC,

        *Defendant-Appellee*.

No. 12-4248

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:11-cv-00314—George C. Smith, District Judge.

Argued: June 19, 2013

Decided and Filed: November 26, 2013

Before: GILMAN and GRIFFIN, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:** Troy J. Doucet, DOUCET & ASSOCIATES, LLC, Columbus, Ohio, for Appellant. Daniel C. Gibson, BRICKER & ECKLER LLP, Columbus, Ohio, for Appellee. **ON BRIEF:** Troy J. Doucet, Audra L. Tidball, DOUCET & ASSOCIATES, LLC, Columbus, Ohio, for Appellant. Daniel C. Gibson, Anne Marie Sferra, Nelson M. Reid, BRICKER & ECKLER LLP, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

PER CURIAM. Christine Marais appeals the dismissal of her claims under the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq*., and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq*., on Defendant Chase Home Finance

_____

[*]Following argument in this case, Judge White recused herself. This decision is filed by quorum of the panel pursuant to 28 U.S.C. § 46(d).

1

(Chase)'s motion for judgment on the pleadings.  We AFFIRM the dismissal of the TILA claim and REVERSE the dismissal of the RESPA claims.

## I.

This case arises from a residential loan servicing agreement between Marais, the obligor/borrower, and Chase, a servicer of her loan.  The background facts set forth by the district court are undisputed:

> On or about September 25, 2006, Plaintiff executed a promissory note and mortgage for the purpose of financing a residential property in Franklin County, Ohio.  The promissory note was between Plaintiff and Residential Finance Corporation, designated as the "lender."  Although the timing is unclear from the pleadings, at some point [Chase] became the "servicer" of Plaintiff's loan.

> On January 3, 2011, Plaintiff sent a letter, designated as a "Qualified Written Request" (QWR) to [Chase].  The letter stated that it was being sent pursuant to [RESPA,] 12 U.S.C. [2]605(e)[,] and requested information relating to Plaintiff's loan.  The QWR specifically requested information such as the amount owed on the loan, the identity of the "current holder" of the loan and the date on which the current holder obtained the loan, the date [Chase] began servicing the loan, and a breakdown of all charges accrued on the account.  In her QWR, Plaintiff disputed all late fees and other charges and noted that [Chase] had refused to give her a loan modification for which she was qualified.  Plaintiff also noted that [Chase] had failed to provide a copy of the Note which [she had requested] on November 22, 2010.  Plaintiff requested receipt of all documents within sixty days, as required under [RESPA,] 12 U.S.C. § 2605(e).

> By letter dated January 7, 2011, [Chase] acknowledged receipt of Plaintiff's request.  [Chase] then sent a letter dated February 28, 2011, to Plaintiff.  According to the letter, [Chase] was enclosing copies of the Note, Security Instrument, Loan Transaction History, Escrow Disclosure Statements, Appraisal and Payoff Quote.  (Doc. 2-3).  The letter further stated that any information which was requested but not included was either unavailable or considered proprietary and would not be provided. (*Id.*)  Although requested by Plaintiff, [Chase's] letter did not provide the identity of the owner of Plaintiff's loan, did not provide information related to the correctness of Plaintiff's account, and did not provide any contact information for an employee who could provide assistance to the Plaintiff.  (Complaint ¶ 23-27).

Plaintiff alleges that between [January 13, 2009, and] August 13, 2009, she made excess payments totaling approximately $574.89 which [Chase] failed to credit to Plaintiff's principal balance. She further alleges that on November 26, 2007, [Chase] received $221.21 for Plaintiff's account which was not credited to her principal balance. According to Plaintiff, rather than crediting her account, [Chase] kept these payments for its own benefit.

On April 12, 2011, Plaintiff filed the instant suit . . . alleg[ing] claims for violation of [TILA], 15 U.S.C. § 1641(f)(2), [RESPA], 12 U.S.C. § 2605(e)(2), the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq*., and for common law conversion.

PageID 626–28/R. 33.

Well after Marais filed the instant action and after Marais responded to Chase's motion for judgment on the pleadings, Chase for the first time identified the owner of Marais's loan, Federal National Mortgage Association (Fannie Mae).[1]

The district court granted Chase's motion for judgment on the pleadings on the TILA and RESPA claims, declined to exercise supplemental jurisdiction over the state law claims, and dismissed the case in its entirety. PageID 626/R. 33.

**II.**

This court reviews the district court's grant of judgment on the pleadings under Fed. R. Civ. P. 12(c) applying the same *de novo* standard of review applicable to orders of dismissal under Rule 12(b)(6). *Poplar Creek Dev. Co. v. Chesapeake*, 636 F.3d 235, 240 (6th Cir. 2011). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id*. (citation omitted); *see also Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1107–08 (6th Cir. 2012).

---

[1]Several months later, Marais moved for leave to file an amended complaint to add Fannie Mae as a defendant and to "address some of the alleged defects" Chase raised in its motion for judgment on the pleadings. The magistrate judge deemed Marais's untimely motion a request to modify the case schedule under Fed. R. Civ. P. 16(b)(4), and denied leave to amend, concluding that Marais had not shown that despite due diligence she could not have reasonably met the scheduled deadlines. Marais acknowledged at argument that she is not appealing the denial of her motion for leave to amend.

Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

*Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012).

## III.  TILA

The declared purpose of TILA, 15 U.S.C. § 1601, *et seq.*, is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). Accordingly, TILA requires creditors/owners to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id.* (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). TILA is a remedial statute and should be given "a broad, liberal construction in favor of the consumer." *Klemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 353 (6th Cir. 2008); *Begala v. PNC Bank, Ohio N.A.*, 163 F.3d 948, 950 (6th Cir. 1998).

TILA defines "creditor" as

only . . . a person who both (1) regularly extends . . . consumer credit . . . , and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable . . .

15 U.S.C. § 1602(g) (formerly § 1602(f)).

Because the debt was not initially payable to Chase, Marais has not alleged that Chase is or was a creditor of her loan.

**A.**

Marais's claim is based on her interpretation of amendments to TILA's civil-liability provision, § 1640, and liability-of-assignees provision, § 1641. She contends that Chase's liability does not depend on its being a creditor.

The TILA amendments on which Marais relies were part of the Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, § 404(g), 123 Stat. 1632, 1658, which amended TILA in two ways. First, it added subsection (g) to § 1641, requiring that new owner-assignees of loans (referred to as "new creditors") notify the borrower of certain information about the assignment. Second, and directly at issue here, it added the phrase "subsection (f) or (g) of section 1641"[2] (in bold type below) to the civil liability provision, § 1640.

Section 1640 now provides:

(a) Individual or class action for damages; amount of award; factors determining amount of award

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under . . . **subsection (f) or (g)** of section 1641 of this title . . . is liable to such person in an amount equal to the sum of –
(1) any actual damage sustained by such person as a result of the failure;
. . . .
With respect to any failure to make disclosures required under this part or part D or E of this subchapter, liability shall be imposed only upon the creditor required to make disclosure, except as provided in [15 U.S.C. § 1641].

15 U.S.C. § 1640(a) (emphasis added).

---

[2]Before the 2009 amendments, section 1640(a) provided: "including any requirement under section 1635 of this title . . ." Section 1635 addresses "disclosure of obligor's right to rescind," and is not at issue here.

Section 1641, addressing the liability of assignees, provides that any civil action that may be brought against a creditor may also be brought against a creditor's voluntary assignee only if the violation is apparent on the face of the disclosure statement:

> (e) Liability of assignee for consumer credit transactions secured by real property
>
>> (1)  In general
>> Except as otherwise specifically provided in this subchapter, any civil action against a creditor for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if –
>> (A)  the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and
>>
>> (B)  the assignment to the assignee was voluntary.
>
> . . . .

15 U.S.C. § 1641(e); *see also* § 1641(a).

Subsection (f), entitled "Treatment of servicer," exempts servicers from liability unless the servicer also is or was the owner/creditor of the obligation:

> (f) Treatment of servicer[3]
>
>> (1) In general
>> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.
>>
>> (2) Servicer not treated as owner on basis of assignment for administrative convenience

---

[3]Chase does not dispute that it is a servicer. Section 1641 defines "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." *See* 15 U.S.C. § 1641(f)(3) (adopting RESPA's meaning of "servicer," 12 U.S.C. § 2605(i)(2)).

> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. *Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.*

15 U.S.C. § 1641(f)(1)–(2) (emphasis added). The italicized sentence is the basis for Marais's TILA claim.

Subsection (g), added by the 2009 amendments, is entitled "Notice of new creditor," and mandates that

> not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer.

15 U.S.C. § 1641(g)(1).

**B.**

Marais argues that by adding to the civil-liability provisions of § 1640(a) a reference to the failure to meet a requirement under subsection (f) or (g) of § 1641, Congress created a private cause of action for violation of those sections. And, because only servicers can violate § 1641(f), Congress must have intended to create a cause of action against servicers for failure to comply with § 1641(f)(2), notwithstanding that the introductory language of § 1640 refers only to creditors.

Although this court has not addressed whether a mere servicer can be liable for violating subsection 1641(f)(2) *specifically*, we have twice held that a TILA action may not be maintained against a mere servicer, in one case for foreclosing on a borrower's

loan, *Mourad v. Homeward Residential, Inc.*, 517 F. App'x 360, 364 (6th Cir. 2013), and in the second case for fraud and misrepresentation, *Coyer*, 701 F.3d at 1109.

> [A]n action under TILA can be brought only against creditors or their assignees. 15 U.S.C. §§ 1640–1641. TILA defines a creditor as someone who both regularly extends consumer credit and is initially due payment for debt arising from a consumer-credit transaction. 15 U.S.C. § 1602(g). This definition does not include loan servicers like AHMSI. Servicers are also excluded from the definition of assignees "unless the servicer is or was the owner of the obligation." *Id.* § 1641(f)(1). Mourad does not dispute that AHMSI was merely the servicer, and not the owner, of the loan. AHMSI is therefore not liable under TILA. *See Coyer*, 701 F.3d at 1109 (holding that the plaintiffs failed to state a TILA claim against their mortgage servicer for alleged misrepresentation and fraud at the time they entered the transaction because the servicer was not a party to that transaction and instead bought the mortgage on the secondary market).

*Mourad*, 517 F. App'x at 364.

Marais argues that notwithstanding these cases, the language of §§ 1640 and 1641 is

> not as "plain" as Chase suggests. This is because, under Chase's argument, one has to reach the conclusion that Congress, knowing borrowers frequently cannot identify the "creditor" of their obligation, specifically amended TILA in 2009 to create civil liability against the unidentifiable creditor for its violation of a provision under which the creditor has no obligation.

Reply Br. at 1–2. Marais is not the first to comment on this conundrum; several scholars and courts have as well:

> Because the act does not impose liability upon a servicer who is not an owner or assignee of a mortgage loan for b[r]eaches of [§] 1641(f)(2), and because the owner cannot breach that provision since it requires nothing of the owner, the cause of action against the owner created by [§] 1640(a) for failure to comply with requirements of [§] 1641(f) appears to be meaningless.
>
> To avoid rendering [§] 1640(a) meaningless, [several] judges conclude that agency principles apply, so the owner of a mortgage loan may be held vicariously liable for the violations of [§] 1641(f)(2) by its

agent, the servicer.  *Kissinger v. Wells Fargo Bank, N.A.*, No. 12-60878-CIV (S.D. Fla. Aug. 30, 2012) (2012 WL 37590034).  The judge relied heavily on *Davis v. Greenpoint Mortgage Funding, Inc.*, No. 1:09-CV-2719-CC-LTW (N.D. Ga. Mar. 1, 2011) (2011 WL 7070221), *report and recommendation adopted in part, rejected in part on other grounds*, 2011 WL 7070222 (N.D. Ga., Sep. 19, 2011).

Earl Phillips, *Is Owner of Mortgage Loan Liable for Servicer's Breach?*  A.S. Pratt & Sons, 10-12 Consumer Cred. & Truth-In-Lending Compl. Rep. 2 (October 2012).  The few decisions explicitly addressing whether a mere servicer may be liable for violating § 1641(f)(2), all from out-of-circuit district courts, have held in the negative, as did the district court in the instant case.  *See Kelly v. Fairon & Assocs.*, 842 F. Supp. 2d 1157, 1161–62 (D. Minn. 2012), and cases cited therein, including *Ording v. BAC Home Loans Servicing, LP*, No. 10-10670-MBB, 2011 WL 99016, at *3 (D. Mass. Jan. 10, 2011) ("While it is the servicer of the loan that has the obligation to provide the information to the borrower pursuant to section 1641(f), liability for violations of TILA rests squarely and solely with creditors.").

In *Kelly*, the district court rejected an argument Marais advances here–that since § 1641(f)(2) plainly obligates only the servicer, Congress intended for the entity responsible for receiving scheduled payments—the only entity the borrower is likely to deal with—to be obligated to respond to the borrower's QWRs for the identity of the owner of the loan, and that the reference to "subsection (f)" added to § 1640(a) in 2009 is meaningless unless it creates servicer liability:

> Kelly argues that the reference in § 1640(a) to the servicer reporting obligation under § 1641(f)(2) evidences an intent to hold servicers liable. The court disagrees.
>
> The crux of Kelly's argument is that § 1640(a) was amended in 2009 to include a cross-reference to § 1641(f), thereby creating servicer liability.  *See* Helping Families Save Their Homes Act of 2009, Pub.L. No. 111-22, § 404(b), 123 Stat. 1632, 1658. Kelly claims that a servicer cause of action must exist, because otherwise the amendment would be without effect.  As other courts have noted, however, this amendment may have been an attempt to hold creditors vicariously liable for servicer violations of § 1641(f)(2).  *See e.g., Holcomb v. Fed. Home Loan Mortg. Corp.*, No. 10-81186-CV, 2011 WL 5080324, at *6 (S.D. Fla. Oct. 26,

2011); *Consumer Solutions REO, LLC v. Hillery*, No. C-08-04357, 2010 WL 144988, at *3 (N.D. Cal. Jan. 8, 2010) ("There is a fair chance Congress intended vicarious liability . . . ."). Further, had Congress intended to hold servicers liable for violations under § 1641(f)(2), it would have included the word "servicer" in § 1640(a). Instead, § 1640(a) notes liability only for creditors, and § 1641 makes clear that a servicer "shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation." 15 U.S.C. § 1641(f)(2).

Moreover, this interpretation is consistent with a majority of courts that hold that TILA does not allow a private cause of action against servicers. *See e.g., Sherrell v. Bank of Am., N.A.*, No. CV F 11-1785, 2011 WL 6749765, at *11–12 (E.D. Cal. Dec. 22, 2011); *Holcomb*, 2011 WL 5080324, at *6; *Consumer Solutions REO, LLC*, 2010 WL 144988, at *3; *Garcia v. Fannie Mae*, 794 F. Supp. 2d 1155, 1172 (D. Or. 2011); *Selby*, 2011 WL 902182, at *6; *Ording v. BAC Home Loans Servicing, LP*, No. 10-10670, 2011 WL 99016, at *3 (D. Mass. Jan. 10, 2011) ("[L]iability for violations of TILA rests squarely and solely with creditors.") (citation omitted). *But see Stephenson*, 2011 WL 2006117, at *3; *Sam v. Am. Home Mortg. Servicing*, No. S-09-2177, 2010 WL 761228, at *3 (E.D. Cal. Mar. 3, 2010) . . . . There is no evidence that Chase is anything other than the servicer of Kelly's mortgage. Therefore, summary judgment in Kelly's favor is not warranted as to the TILA claim.

*Kelly*, 842 F. Supp. 2d at 1161–62 (footnote omitted).

Marais also points to language at the end of § 1640(a): "[w]ith respect to any failure to make disclosures required under this part . . . . liability shall be imposed only upon the creditor required to make disclosure, *except as provided in section 1641*." Marais asserts that the last clause indicates that liability may be imposed on entities other than the creditors as provided by § 1641, which would include servicers. This argument is unpersuasive because section 1641 clearly imposes liability, as opposed to obligations, only on servicers who are also creditors or creditor-assignees. *See Mourad*, 517 F. App'x at 364.[4]

---

[4]Chase also maintains that the section 1640(a) language Marais relies on is inapposite because "disclosure" is a term of art referring to the manner in which a creditor must convey the information that Congress deemed basic to an intelligent assessment of a credit transaction. *See* 15 U.S.C. §§ 1631,

**C.**

The three unpublished out-of-circuit district court cases Marais cites to support that the 2009 amendments created a private right of action against a mere servicer (two of which the district court in *Kelly* cited) do involve § 1641(f)(2) claims that survived motions to dismiss, but in none was the question whether a mere servicer is subject to liability squarely presented, because none of the defendants raised that defense. *See Sam v. Am. Home Mortg. Servicing*, No. CIV. S-09-2177, 2010 WL 761228, at *3 (E.D. Cal. March 3, 2010) (12(b)(6) motion denied where defendants argued that § 1641(f)(2) does not *mandate* that servicers provide the name of the owner on borrowers' request "but rather only makes such provision optional," the district court holding that statute's plain language does so require); *Stephenson v. Chase Home Fin., LLC*, No. 10cv2639-L (WMc), 2011 WL 2006117, at *2 (S.D. Cal. May 23, 2011) (denying 12(b)(6) motion where Chase, the original refinance lender and subsequent servicer, responded to borrower's QWR by identifying lender but failed to identify the master servicer or owner, and Chase argued that plaintiffs did not allege a violation of § 1641(f)(2) or actual damages); *Erickson v. PNC Mortg.*, No. 3:10-cv-0678-LRH-VPC, 2011 WL 1743875, at *3 (D. Nev. May 6, 2011) (denying PNC and Freddie Mac's 12(b)(6) motion where borrowers alleged they sent written request to defendant PNC asking who owned their mortgage note and did not receive an appropriate response, the court determining that allegations were sufficient to state a claim "against defendants" for violation of TILA.)

---

1638(B)(13)–(19). However, not all courts interpret the term "disclosure" as applying only to documents created at the time of the origination of the loan. *See e.g., Cenat v. U.S. Bank, N.A.*, 930 F. Supp. 2d 1347, 1354 (S.D. Fla. 2013) (acknowledging that "many of the instances in TILA where disclosures are mentioned address situations at the inception of the creditor-debtor relationship," but holding that the term "disclosure statement" can be construed to encompass postassignment disclosures, since § 1641(g) provides that "'[i]n addition to other *disclosures* required by this title,' whenever a mortgage loan is sold, transferred, or assigned, 'the creditor that is the new owner or *assignee*' must provide the obligor with contact information"; that the term "disclosure statement" is not defined in § 1641(a); and that by the 2009 amendments "Congress then created a private right of action for violating th[e] new subsection [(g)], as well as for violating 1641(f)(2).").

**D.**

We conclude that the district court properly dismissed the TILA claim because Marais alleged only that Chase was a servicer of the loan and TILA expressly exempts servicers from liability unless the servicer was also a creditor or a creditor's assignee. Marais's argument that Congress intended the 2009 amendments to impose liability on mere servicers finds virtually no support in caselaw. For these reasons, we conclude that the district court did not err by holding that Chase, as a mere servicer, cannot be liable for violating 15 U.S.C. § 1641(f)(2) and affirm the dismissal of the TILA claim.

**IV. RESPA**

The purposes underlying RESPA

> are very similar to those of the Truth in Lending Act. Congress's intent was "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

*Vega v. First Fed. Sav. & Loan Ass'n of Detroit*, 622 F.2d 918, 923 (6th Cir. 1980) (quoting 12 U.S.C. § 2601(a)). "Although the 'settlement process' targeted by the statute was originally limited to the negotiation and execution of mortgage contracts, the scope of the statute's provisions was expanded in 1990 to encompass loan servicing." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665–66 (9th Cir. 2012) (some internal citations omitted). As a remedial statute, RESPA is construed broadly to effectuate its purposes. *In re Carter*, 553 F.3d 979, 985–86, n.5 (6th Cir. 2009); *see also Medrano*, 704 F.3d at 665–66 ("RESPA's provisions relating to loan servicing procedures should be construed liberally to serve the statute's remedial purpose." (internal citation and quotation marks omitted)).

## A.

12 U.S.C. §§ 2605(e)(2) and (e)(3) provided at pertinent times:[5]

(e)  Duty of loan servicer to respond to borrower inquiries
. . .

(2) Action with respect to inquiry
Not later than 60 days . . . after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating
During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide

---

[5]That is, in February 2011, when Chase deficiently responded to Marais's QWR.

> information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency . . .

12 U.S.C. §§ 2605(e)(2), (3).

Section 2605(f) provided at pertinent times:

(f)  Damages and costs
Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
  (1)  Individuals
  In the case of any action by an individual, an amount equal to the sum of—
      (A) any actual damages to the borrower as a result of the failure; and
      (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. 2605(f)(1).

## B.

Chase does not deny violating either RESPA provision; rather, its 12(c) motion argued that Marais "fails to allege any damages purportedly flowing from Chase's QWR response with factual support sufficient to satisfy the plausibility pleading standard as set forth . . . in *Iqbal*, 129 [S. Ct.] 1937, and *Twombly*, 550 U.S. 544, 555 (2007)." PageID 88/R. 15 at 5. The district court agreed and dismissed both RESPA claims on causation grounds, concluding that Marais did not allege a sufficient link between the alleged actual damages and Chase's deficient response to her QWR.

Marais's complaint alleged that because Chase deficiently responded to her QWR, it continued to misapply payments of approximately $800 and that she incurred actual damages that included the amount of money Chase "converted" and "interest and disgorgement interest." Marais's complaint at paragraphs 42 and 56 alleged that "[d]ue to these violations, Defendant is liable to Plaintiff in the amount of her actual damages" equaling the amount of money Chase converted plus interest. A reasonable inference

arising from these allegations is that because Chase (undisputedly) failed to correct or investigate the misapplied payments, Marais paid interest on a higher principal balance than she should have.[6] *See, e.g.*, *Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809, 814 (N.D. Ill. 2001) (finding that borrower's complaint alleged a causal connection between bank's alleged RESPA violations of section 2605(e) and late fees and foreclosure where complaint alleged that "as a result of" bank violating section (e) by failing to correct problems within 60 days and reporting plaintiff as delinquent to a credit bureau within 60 days of receiving her QWR that disputed the amount of the debt, plaintiff paid late fees and the bank foreclosed on her property.)

The district court did not have the benefit of two unpublished decisions issued during the pendency of this appeal, both of which reversed district court dismissals of RESPA claims based on assertedly inadequately pleaded damages. *See Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424–25 (6th Cir. 2013) (reversing the dismissal of RESPA claim under Rule 12(c) where plaintiffs alleged that defendant responded to their QWR ten days after statutory time period and their complaint alleged "damages in an amount not yet ascertained, to be proven at trial"); *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012) (reversing in part the grant of summary judgment in bank's favor where the borrower alleged financial and emotional damages arising from RESPA violation that district court did not address, and remanding for determination of what damages, if any, can fairly be traced to RESPA violation, noting that "the district court was too quick to grant summary judgment against the entirety of Houston's RESPA claim.")

These two decisions, albeit unpublished, support our conclusion that Marais's RESPA claim must be reinstated. The unpublished Eleventh Circuit decision on which the district court relied is distinguishable in that it involved summary judgment, not a 12(c) motion for judgment on the pleadings. *McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010). And, although it is unclear from the opinion, it appears

---

[6]Marais explained in response to Chase's 12(c) motion how Chase's deficient response to her QWR resulted in additional interest.

that, unlike Marais, the *McLean* plaintiffs did not allege *any* pecuniary damages as a result of the defendant servicer's inadequate response to their QWRs. Moreover, the court construed the term "actual damages" broadly, observing that "plaintiffs arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering," but upheld the grant of summary judgment to the servicer because the plaintiffs' "conclusory allegations were insufficient to support a claim of emotional distress" and they "were unable to articulate any specific injury that was caused by GMAC's failure to respond to their request for information." *Id.* at 470–71.

The district court was obliged to view the facts alleged and inferences therefrom in Marais's favor. *See Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 846 (6th Cir. 2012) (in reviewing a district court's decision on a 12(c) motion we must construe the complaint in the light most favorable to the plaintiff). Marais's complaint sufficiently stated that interest damages flowed from Chase's deficient response to her QWR because any additional interest she paid on the principal balance after Chase deficiently responded to her QWR on February 28, 2011, would flow from the deficient response.

In addition, the district court's determination that costs Marais incurred associated with preparing her QWR did not constitute actual damages, PageID 636 n.2, did not take into account Marais's argument that those costs were for naught *due to Chase's deficient response*, i.e., her QWR expenses became actual damages when Chase ignored its statutory duties to adequately respond. The district could should consider this argument on remand.

Marais also argues that her allegations that Chase provided information to consumer reporting agencies regarding overdue payments that were related to her QWR during the prohibited 60-day period sufficiently stated a RESPA violation. Again, we conclude the complaint was sufficient. Marais pleaded that Chase engaged in a pattern or practice of non-compliance with RESPA's mortgage-servicer provisions, entitling her to statutory damages, and her complaint also sought "actual damages." *See* 12 U.S.C. 2605(f)(1). And, although neither of the two recent RESPA decisions of this court discussed *supra*, *Mellentine* and *Houston*, involved a § 2605(e)(3) claim, their approach

counsels against dismissal of RESPA claims on the basis of inartfully-pleaded actual damages. *See Mellentine*, 515 F. App'x at 425 (reversing the dismissal of RESPA claim under Rule 12(c) where plaintiffs alleged that defendant responded to their QWR ten days after statutory time period and their complaint alleged "damages in an amount not yet ascertained, to be proven at trial"); *Houston*, 505 F. App'x at 548 (reversing in part grant of summary judgment where borrower alleged financial and emotional damages that district court did not address, and remanding for determination of what damages can fairly be traced to RESPA violation.).

## V.

For these reasons, we AFFIRM the dismissal of the TILA claim, REVERSE the dismissal of the RESPA claims, and REMAND for proceedings consistent with this opinion.