NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0809n.06

Case No. 15-1423

FILED

Dec 10, 2015

DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MARTIN MARTINI; MARE MARTINI,                )
                                             )
    Plaintiffs-Appellants,                   )
                                             )
                                            )    ON APPEAL FROM THE UNITED
v.                                           )    STATES DISTRICT COURT FOR
                                             )    THE EASTERN DISTRICT OF
JPMORGAN CHASE BANK, N.A.;                    )    MICHIGAN
FEDERAL HOME LOAN MORTGAGE                     )
CORPORATION,                                  )
                                             )    OPINION
    Defendants-Appellees.                    )

BEFORE:  STRANCH, DONALD, and LIPEZ, Circuit Judges.[*]

    **BERNICE BOUIE DONALD, Circuit Judge.**  Plaintiffs-Appellants Martin Martini and Mare Martini seek to set aside the foreclosure of their home, alleging that they were prejudiced by three irregularities in the foreclosure process caused by Defendants-Appellees JPMorgan Chase Bank, N.A. and the Federal Home Loan Mortgage Corporation.  They also claim that the defendants violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e).  The district court granted the defendants' motion to dismiss, and the Martinis appeal.  Because the Martinis' complaint does not plead sufficient facts under the governing laws, we **AFFIRM** the district court's judgment.

---

[*]The Honorable Kermit V. Lipez, Circuit Judge for the United States Court of Appeals for the First Circuit, sitting by designation.

I.

In 2006, the Martinis obtained a $417,000 loan from Washington Mutual Bank ("Washington Mutual") in exchange for a mortgage against their home. Washington Mutual recorded the mortgage on January 25, 2007. The Martinis began timely making their mortgage payments.

On September 25, 2008, regulators from the United States Office of Thrift Supervision closed Washington Mutual, concluding that the bank would not recover from the recent economic downturn. The regulators appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. The FDIC then sold various Washington Mutual assets, including the Martinis' mortgage and note, to JPMorgan Chase Bank, N.A. ("Chase"). Chase failed to record those mortgages, creating a gap in the chain of mortgage assignments.

In 2009, the Martinis struggled to make their mortgage payments and requested a loan modification from Chase. In November 2010, Chase notified the Martinis that they did not qualify for a modification. That same month, Chase began foreclosure by advertising proceedings and, pursuant to Mich. Comp. Laws § 600.3205a, notified the Martinis that they were entitled to a meeting to discuss possible alternatives to foreclosure. The Martinis requested that meeting and, over the next couple of months, submitted documentation of their financial status to Chase's foreclosure counsel.

Chase and the Martinis met on February 24, 2011. At that time, Chase's representative had not reviewed the financial documentation that the Martinis had submitted, and she was therefore unable to substantively discuss a loan modification. Instead, she explained that she would forward the Martinis' financial documentation to an underwriter, who would respond with

a decision regarding the loan modification in thirty to forty-five days. Around March 4, 2011, Chase mailed a letter to the Martinis indicating that they did not qualify for a loan modification.

On April 13, 2011, the Martinis sent a letter to both Chase and its counsel, requesting the calculations and guidelines that Chase had used in determining that the Martinis did not qualify for a loan modification. When the couple did not receive a response, they sent the letter again on July 7, 2011. On July 12, Chase's counsel responded via email, providing only the general guidelines on loan modifications from the Federal Home Loan Mortgage Corporation ("Freddie Mac"). They suggested contacting Chase for the specific calculations that it had performed.

The Martinis then contacted Chase directly about its denial of their loan modification. Chase explained that it denied the Martinis a loan modification because their financial documentation was outdated. Chase then requested more recent financial documentation so that it could reconsider granting them a loan modification. On July 15, 2011, the Martinis found a foreclosure notice posted to their property. Two months later, Chase again denied the Martinis' loan modification request without providing the guidelines it followed or the calculations it performed. The Martinis subsequently mailed a letter to Chase and its counsel, stating that they had still not received copies of the calculations that Chase had performed.

On November 1, 2011, Chase conducted a sheriff's sale, and Freddie Mac purchased the property. The sheriff's deed was recorded on November 14. The redemption period for the property lasted until May 1, 2012, but the Martinis were unable to take advantage of it.

On June 20, 2014, the Martinis filed the instant lawsuit.[1] Their complaint asserts that the defendants committed three irregularities during the foreclosure procedure and that those irregularities prejudiced their ability to protect their property interests. They also claimed that the defendants violated RESPA. After removing this case from state court, the defendants

---

[1]The Martinis originally filed suit in December 2011; however, that case was dismissed for failure to prosecute.

moved to dismiss the complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). The district court granted the defendants' motion. The Martinis timely appealed.

## II.

We apply de novo review to a district court's decision to grant a motion to dismiss under Rule 12(b)(6) for failure to state a claim for relief. *Holliday v. Wells Fargo Bank, N.A.*, 569 F. App'x 366, 367 (6th Cir. 2014). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While we accept as true well-pleaded factual allegations in a complaint, we "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999); *see JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007). We grant a motion to dismiss "only if the moving party is nevertheless clearly entitled to judgment." *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973). "'In addition to the allegations in the complaint, [we] may also consider other materials that are integral to the complaint . . . .'" *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (alternation in original) (quoting *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008)).

## A.

Our decision is controlled by Michigan statutory law governing foreclosures by advertisement. *See* Mich. Comp. Laws § 600.3201, *et seq.* "In Michigan, once a foreclosure is complete and the redemption period following the foreclosure has expired, a former owner loses

all right, title, and interest in and to the mortgaged property." *Munaco v. Bank of Am.*, 513 F. App'x 508, 510 (6th Cir. 2013). The only way to set aside a foreclosure by advertisement after a sale is to demonstrate "a clear showing of fraud or irregularity, but only as to the foreclosure procedure itself." *Vanderhoof v. Deutsche Bank Nat'l Trust*, 554 F. App'x 355, 357 (6th Cir. 2014). However, demonstrating fraud or an irregularity alone is not enough; the mortgagors must also demonstrate that they were prejudiced by the fraud or irregularity in the foreclosure procedure. *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich. 2012); *see Spadafore v. Aurora Loan Servs., LLC*, 564 F. App'x 168, 171 (6th Cir. 2014). "To demonstrate such prejudice, [the mortgagors] must show that they would have been in a better position to preserve their interest in the property absent [the] defendant's noncompliance with the statute." *Kim*, 825 N.W.2d at 337. This is a "'high standard.'" *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 360 (6th Cir. 2013) (quoting *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 429-30 (6th Cir. 2013)).

Here, the complaint alleges that Chase and Freddie Mac caused three irregularities in the Martinis' foreclosure. It first asserts that Chase's failure to record the mortgage transfer from the FDIC and Washington Mutual resulted in an incomplete record of mortgage assignments, in violation of Mich. Comp. Laws § 600.3204(3). Second, the complaint contends that Freddie Mac improperly used a credit bid during the foreclosure proceedings, in violation of Mich. Comp. Laws §§ 600.3204(3) and 600.3228. Third, the complaint alleges that Chase failed to provide the Martinis with the loan modification calculations, in violation of Mich. Comp. Laws § 600.3205c(5).

The complaint also asserts that these three irregularities prejudiced the Martinis' ability to protect their property interest in several ways.[2] First, it contends that the Martinis were "fearful of making their mortgage payment to any party whatsoever in fear that they are paying the wrong party [as well as] fearful that they will have to eventually [] pay the correct party a second time." R. 1-4, PageID # 119. Second, the complaint claims that the Martinis were denied "access to the true holders of their debt so as to bar them from being able to obtain a mortgage loan discharge from the true and correct party that actually has the authority to issue a mortgage loan discharge." *Id.* Third, the complaint alleges that the irregularities diminished "the use and enjoyment of [the Martinis'] home of over 20 years." *Id.* Fourth, the complaint claims that Chase and Freddie Mac wrongfully reported to credit agencies that the Martinis were "in default on their loan and a high credit risk." *Id.* at 120. Finally, the complaint argues that the Martinis' image, reputation, and income as business owners have suffered.

On appeal, the Martinis only assert that the district court erred in not finding that they were prejudiced by the defendants' actions in the following ways: (1) "they were unable to preserve ownership of their property under a modified loan structure" and (2) "they may be subject to double collection," first by Chase and then by Freddie Mac. Appellants' Br. 23.

Under Michigan law, even assuming that Chase and Freddie Mac caused irregularities in the foreclosure procedure, the Martinis' prejudice arguments fail. First, as the district court noted, their claim that Chase failed to modify the loan structure is foreclosed. That type of action must be brought during the foreclosure procedure and sale, not after. *See Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 756 (6th Cir. 2012) (noting that the plaintiffs "appear to have

---

[2]The Martinis additionally allege that they were prejudiced by the defendants' "failure to comply with the requirements of the Uniform Commercial Code to cancel and deliver their original promissory note so that [they] have evidence that their loan was paid off in full." R. 1-4, PageID #120. However, the complaint also lists this issue as Count VI. *Id.* at 126. Because the Martinis do not revisit Count VI on appeal, we decline to address it. *See Connolly v. Deutsche Bank Nat'l Trust Co.*, 581 F. App'x 500, 503 n.4 (6th Cir. 2014).

missed the boat regarding the applicability of this statute" because "they brought this action after the foreclosure sale occurred, and so there is no foreclosure to enjoin or convert"). Furthermore, "[a]n alleged irregularity in the loan modification process[] does not constitute an irregularity in the foreclosure proceeding." *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 294 (6th Cir. 2015). On appeal, the Martinis fail to explain how their prejudice claim survives these notions.

Second, the Martinis do not plead plausible facts that suggest they may be subject to double collection. Their allegation that both entities have attempted to claim possession of the note and mortgage is contrary to the record. The sheriff's deed clearly delineates the history of the mortgage's owner: from Washington Mutual to Chase to the FDIC and then sold at the sheriff's sale to Freddie Mac. Thus, they have not shown that they may be liable to anyone but Chase. *See Connolly*, 581 F. App'x at 508. The Martinis have also not alleged, for example, that both entities have attempted to collect from them. Nor have they alleged that they sent payments to the wrong entity. *See Law v. Ocwen Loan Serving, LLC*, 587 F. App'x 790, 795 (5th Cir. 2014). Without more, they have failed to demonstrate how they would have been in a better position to preserve their property interest if Chase had properly recorded the mortgage in compliance with state law. *See Kim*, 825 N.W.2d at 337.

The Martinis' remaining allegations regarding prejudice are insufficient under Michigan law because they are a consequence of the Martinis' inability to pay their mortgage and not irregularities in the mortgage foreclosure process.

B.

The Martinis next argue that they pleaded sufficient factual allegations to state a claim for relief under RESPA, 12 U.S.C. § 2605(e). Congress enacted RESPA "in part to provide 'more effective advance disclosure to home buyers and sellers of settlement costs,' and in response to

'abusive practices' in the 'real estate settlement process.'" *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013) (quoting § 2601(a), (b)(1)). "RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquiries." *McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010). For a borrower inquiry to trigger RESPA's procedural requirements, it must meet the definition of a "qualified written request" ("QWR"). § 2605(e). If a loan servicer fails to follow the provisions for responding to borrower inquiries, RESPA allows borrowers to recover actual damages as well as statutory damages up to $2,000 if the damages are based on "a pattern or practice of noncompliance." § 2605(f)(1)(B).

Here, the complaint alleges that the Martinis sent numerous letters to Chase, requesting the guidelines and calculations that were used to deny them a loan modification. These letters, the Martinis argue, are QWRs within the meaning of RESPA. The Martinis' complaint alleges that Chase's failure to respond caused them to incur damages—namely, that the their credit scores were harmed; that they sustained damages to their reputations due to wrongful foreclosure; that they cannot obtain a home mortgage for seven years; that they cannot file for bankruptcy; and that they were unable to engage in any alternatives to foreclosure. The Martinis argue that their damages are similar to those discussed in *Marais v. Chase Home Finance LLC*, 736 F.3d 711, 712-13 (6th Cir. 2013) (per curiam), where this Court reversed a district court's decision to grant a motion to dismiss with respect to a RESPA claim.

In *Marais*, this Court concluded that the plaintiff had adequately stated a claim for relief under RESPA by naming three ways in which she incurred damages as a result of the defendant's RESPA violation. *Id.* at 720-22. First, the plaintiff argued that Chase misapplied her payments, which caused her to pay "interest on a higher principal balance than she should

have." *Id.* at 720. Second, she asserted that the costs she incurred in preparing the QWR became damages once Chase "ignored its statutory duties to adequately respond." *Id.* at 721. Finally, she argued that her credit scores were negatively affected when "Chase provided information to consumer reporting agencies regarding overdue payments that were related to her QWR during the prohibited 60-day period." *Id.*

Even if we assume, *arguendo*, that Chase violated RESPA and that the Martinis' letters qualified as QWRs, the Martinis fail to adequately plead the required associated damages. The damages alleged in *Marais* resulted from Chase's RESPA violation—namely, that Chase's failure to respond resulted in continued prejudicial practices, costing the plaintiff money. 736 F.3d at 720-22. Here, the Martinis allege damages that are due to their inability to pay their mortgage, not the alleged RESPA violation. *See Houston v. U.S. Bank Home Mortg. Wis. Serving*, 505 F. App'x 543, 548 (6th Cir. 2012) (concluding "that there is no genuine dispute that, by virtue of [the plaintiff's] continued non-payment of undisputed debts, [the bank's] RESPA violation did not result in her foreclosure"). Therefore, the Martinis fail to adequately allege a RESPA claim.

The Martinis stress that the district court overlooked their assertion that, due to Chase's alleged RESPA violation, they were unable "to engage in other foreclosure avoidance alternatives to save their home." R. 1-4, PageID #125. They explain that they were referring to their loan modification requests. Loan modification requests do not qualify as QWRs because they do not relate to the loan's servicing. *See* 12 U.S.C. § 2605(e)(1)(A) (indicating that the section addressed inquiries "relating to the servicing" of the loans). *Cf. Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012) (declining to find the plaintiffs' letters qualified as

QWRs because they demanded changes to the loan terms and not the loan's servicing). Accordingly, those requests do not demand that Chase meet RESPA's procedural requirements.

III.

For the foregoing reasons, we **AFFIRM** the district court's judgment.