**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

No. 18-2555

_____


FRANCINE COLE, both individually and as Co-Administrator

for the Estate of Annie L. Cole,

Appellant

v.


WELLS FARGO BANK, N.A.; GWENDOLYN COLE HOOVER;

KEVIN TODD JOHNSON


_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.:  2-12-cv-01932)
District Court Judge:  Honorable Kevin McNulty

_____


Submitted under Third Circuit LAR 34.1(a)
July 9, 2019


(Opinion filed: October 9, 2019)


Before:  McKEE, ROTH and RENDELL, Circuit Judges

—————

O P I N I O N*

—————

**RENDELL**, *Circuit Judge*:

Francine Cole ("Cole") sued Wells Fargo Bank, N.A., Gwendolyn Cole-Hoover ("Hoover"), and Kevin Johnson ("Johnson"), after a dispute arose over the estate of Annie Cole. The District Court dismissed the claims against Hoover and Johnson for lack of subject matter jurisdiction and granted Wells Fargo's motion for summary judgment. The Court also denied Cole's motion to recuse the magistrate judge who presided over her case. We review a motion for summary judgment *de novo*, and construe facts in a light most favorable to the non-moving party. We review the denial of a motion to recuse for abuse of discretion. As such, we will affirm the judgment of the District Court.

BACKGROUND

Annie Cole passed away in 2001, leaving her daughters, Francine Cole and Gwendolyn Cole-Hoover, as co-administrators of her estate. In 2006, the daughters first executed a note for $126,488 with Wells Fargo, secured by a lien on their family home. The daughters then executed a Home Equity Line of Credit ("HELOC") with Wells Fargo secured by a second lien against the home. Both daughters had the right to withdraw funds from the HELOC account.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Continued disputes over the home led to the New Jersey Probate Court's ordering the property be sold and requiring Cole to make repairs to the property using funds from the HELOC account. During that time, Cole withdrew $98,000 from the HELOC account to repair the property, pay funeral expenses of one of her sisters, pay taxes on family property in South Carolina, and pay attorney's fees.

Hoover then granted her nephew, Johnson, power of attorney. Upon learning that $62,000 remained in the HELOC account, Hoover instructed Johnson to remove all remaining funds from the account and place them in a separate Wells Fargo Account. Johnson complied. When Cole learned of the withdrawal after a check bounced, she notified Wells Fargo that the transferal of the POA was invalid, and that Hoover improperly withdrew the funds. Wells Fargo returned the money to the account and froze the account, permitting only $10,000 to be withdrawn by Cole.

While Wells Fargo investigated the disputed transfer, Cole apparently changed her mind and sent a letter to the bank exclaiming, "I HOPE WE CAN RESOLVE THIS MATTER TODAY SO THIS ACCOUNT BE IMMEDIATELY REINSTATED, AS IT WAS ILLEGALLY CLOSED, FRUSTRATING OUR PURPOSE FOR OPENING IT." App. 25. Cole also noted that Johnson's POA was a "legal, binding, durable power of attorney." *Id*. Wells Fargo reinstated the account.

Again, Hoover instructed Johnson to remove funds from the account, this time transferring the money to an account jointly held by Hoover and Johnson at a different

3

bank. Cole again complained, claiming that Wells Fargo notified Hoover and Johnson that the account was reinstated but did not notify her.

Cole stopped making payments on the mortgage of the property, and Wells Fargo sent a notice of foreclosure. Wells Fargo later sent a tax sale notice. This suit followed.

PROCEEDINGS BELOW

Cole sued Wells Fargo, Hoover, and Johnson in the United States District Court for the District of New Jersey. Cole asserted claims against Wells Fargo for violating the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A. § 2605, and the Truth in Lending Act ("TILA"), 15 U.S.C.A. § 1666(a). In addition, Cole asserted state law claims against all defendants alleging, *inter alia*, breach of contract, breach of fiduciary duty, common law fraud, consumer fraud, and intentional infliction of emotional distress.

After discovery, the District Court dismissed the claims against Hoover and Johnson for lack of subject matter jurisdiction and declined to exercise supplemental jurisdiction over the remaining wholly state law claims against them. The District Court addressed all claims against Wells Fargo and granted its motion for summary judgment. The District Court also denied Cole's motion to recuse the magistrate judge, who purportedly was connected to an unrelated life insurance proceeding filed by Cole and whose recommendation the District Court adopted in this case.

On appeal, Cole raises eleven claims: that Wells Fargo (1) violated RESPA; (2) breached its contract; (3) breached its fiduciary duty; (4) interfered with her claim to

4

quiet title; (5) committed consumer fraud; (6) committed common law fraud; (7) committed conversion and conversion by undue influence; (8) interfered with inheritance; and (9) intentionally inflicted emotional distress. In addition, Cole claims (10) the District Court should have exercised supplemental jurisdiction over her claims against Hoover and Johnson, and (11) the magistrate judge should have been recused.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. The District Court dismissed claims against Hoover and Johnson for lack of subject matter jurisdiction after declining to exercise supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367(c). The District Court then granted Wells Fargo's motion for summary judgment. After a timely motion for reconsideration and denial of that motion by the District Court on June 11, 2018, Appellant filed her Notice of Appeal on July 11, 2018. We thus have jurisdiction pursuant to 28 U.S.C. § 1291.

ANALYSIS

We review a motion for summary judgment *de novo*, and construe facts in a light most favorable to the non-moving party. *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

**A. Federal Law Claims**

*(1) Wells Fargo did not violate RESPA.*

RESPA requires servicers to respond to Qualified Written Requests ("QWR"). 12 U.S.C. § 2605(e)(1)(A). A QWR is a written correspondence that (1) identifies the name and account of the borrower, and (2) includes a statement that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. *Id.* at § 2605(e)(1)(B). Those requests must be related to servicing, *i.e.*, "[related to] receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments." *Id.* at § 2605(i)(3). The servicer must respond within 30 days of receiving the QWR. *Id.* at § 2605(e)(2). Here, the letters that Cole argues would qualify as QWRs are not requests for covered information. Instead, Appellant requested the "original, ink-signed note for the mortgage." App. 488. Such a request does not concern payments, amounts in accounts, or servicing requests. Rather, it deals with the origination of the loan. *See, e.g.*, *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) ("The statute thus distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the

6

borrower's contractual relationship with the lender, on the other."); *Martini v. JPMorgan Chase Bank, N.A.*, 634 Fed. Appx. 159, 164 (6th Cir. 2015) ("Loan modification requests do not qualify as QWRs because they do not relate to the loan's servicing."); *Knopp v. J.P. Morgan Chase Bank & Co.*, 684 F. App'x 579, 580-81 (7th Cir. 2017), *cert. denied sub nom.* 138 S.Ct. 450 ("The [plaintiffs] do not state a claim upon which relief can be granted under RESPA because inquiries about loan documents' origination and validity are not qualified written requests that give rise to a duty to respond under § 2605(e)." (internal quotation marks omitted)). Even so, RESPA requires that the plaintiff establish "actual damages" causally related to the violation. 12 U.S.C. § 2605(f)(1)(a). Cole failed to establish any actual damages caused by Wells Fargo's delayed response to Cole's request for the original, ink-signed documents. Thus, we affirm the District Court's order granting summary judgment for failure to establish a RESPA violation.[1]

### B. State Law Claims

"A fundamental notion underlying *Erie* is that a federal court sitting in diversity merely provides an impartial forum, not a different set of legal rules." *Edelson v. Soricelli*, 610 F.2d 131, 134 (3d Cir. 1979). Thus, we look to decisions of the state's highest court for an applicable law when reviewing state law claims. *See McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir. 1980). To the extent the highest

---

[1] Cole alleged in the District Court that Wells Fargo violated TILA. She failed to raise that claim on appeal, and we thus decline to address it.

7

state court has not spoken to a particular issue, we predict how the state court would decide the issue based on "all relevant sources of that state's law." *Id*. at 662.

*(2) Wells Fargo did not breach the contract.*

A breach of contract claim requires the existence of a valid contract, breach of that contract, and damages. *See Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007). Cole claims that "permitting the monies to be removed against [her] express wishes . . . while at the same time denying [her] access to those funds . . . was a clear breach of contract." App. Br. at 14. But it is undisputed that the account at issue is a joint account between Cole and Hoover. Further, the Appellant concedes that Johnson's POA was valid. And both parties had equal right to draw from the account. Wells Fargo thus did not breach the contract by permitting a valid account holder to withdraw from an account, even if it was the full amount.

*(3) Wells Fargo did not possess or breach a fiduciary duty with Cole.*

Cole argues that Wells Fargo breached its fiduciary duty. But a creditor-debtor relationship "rarely gives rise to a fiduciary duty," unless "special circumstances" give the creditor reason to know that the "customer is placing his trust and confidence in the [lender]." *United Jersey Bank v. Kensey*, 704 A.2d 38, 44–5 (N.J. Super. Ct. App. Div. 1997). Cole argues that Wells Fargo was notified that the accounts were opened as part of the administration of an estate in probate and that special fiduciary duties would apply. This, however, is not a "special circumstance" that gives rise to a fiduciary duty between Cole and Wells Fargo. Even so, Wells Fargo complied with the terms of the HELOC

account agreement and acted according to Cole's demands to suspend and subsequently reopen the account.

*(4) Wells Fargo did not interfere with Cole's right to quiet title.*

Cole argues that the liens on the estate are invalid and unenforceable, and thus she has the right to "clear up all doubts and disputes concerning" her title to the land. N.J.S.A. § 2A:62-1. She further argues that "[Wells Fargo] cannot indicate where the original note is located, and has been unable to produce a mortgage which was signed by all parties necessary for such a mortgage to be effective." App. Br. at 16. But, Appellant conceded her signatures on both agreements were valid, and her conduct—withdrawing from the HELOC and paying the mortgage—supports the validity of Wells Fargo's liens on the property. Thus, we find no interference with Appellant's claim to quiet title and we affirm the District Court's ruling.

*(5) Wells Fargo did not violate the New Jersey Consumer Fraud Act.*

Cole argues that Wells Fargo's conduct violates the New Jersey Consumer Fraud Act (NJCFA). The NJCFA requires: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009). Unlawful conduct is defined as "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in

9

connection with the sale or advertisement of any merchandise or real estate[.]" N.J.S.A. § 56:8-2. Even construing the facts in a light most favorable to Cole, Wells Fargo did nothing unconscionable, nor did it deceive or misrepresent. Rather, it operated the Joint Account pursuant to the agreement. Absent unlawful conduct, Wells Fargo did not violate the Consumer Fraud Act.

   *(6) Wells Fargo did not commit common law fraud.*

Nor did Wells Fargo commit common law fraud. Common law fraud requires: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). As noted above, Wells Fargo followed the applicable HELOC agreement. The fact that Cole suffered from her joint accountholder's withdrawal does not bear on the lawfulness of Wells Fargo's conduct. Thus, we find no material misrepresentation on the part of Wells Fargo and no common law fraud.

   *(7) Wells Fargo did not commit conversion.*

Cole's conversion claim arises from Johnson's withdrawal of funds from Appellant's joint account with Hoover. Conversion requires an "unauthorized" exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's right. *See Barco Auto Leasing Corp. v. Holt*, 548 A.2d 1161, 1164–65 (N.J. Sup. App. Div. 1988). Not only is this not a

10

claim against Wells Fargo, as Johnson was an authorized POA, but Cole concedes that Johnson's POA was valid and enforceable. Therefore, Johnson was properly authorized to exercise his rights as a POA for Hoover, eliminating the necessary element of a conversion claim, "unauthorized." Wells Fargo thus did not commit or assist any form of conversion.

*(8) Wells Fargo did not interfere with Cole's inheritance.*

Cole argues Wells Fargo interfered with her inheritance. By allowing one of the two holders of a joint account to access the funds, consistent with the terms of the HELOC agreement, Wells Fargo did not interfere with the Appellant's inheritance in a tortious manner. *See Marshall v. Marshall*, 547 U.S. 293, 312 (2006) (quoting Restatement (Second) of Torts § 774B (1979)) ("One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."). And any remaining concern that Johnson or Hoover, alone, interfered with the Appellant's inheritance, could be addressed through probate court. *See Garruto v. Cannici*, 936 A.2d 1015, 1022 (N.J. Super. Ct. App. Div. 2007) ("[A] claim for tortious interference with an anticipated inheritance is unavailable when

11

an adequate probate remedy exists."). We agree with the District Court that a claim for tortious interference is unavailable.

*(9) Wells Fargo did not intentionally inflict emotional distress.*

Cole argues that Wells Fargo intentionally inflicted emotional distress. This comprehends conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Subbe-Hirt v. Baccigalupi*, 94 F.3d 111, 114 (3d Cir. 1996) (quoting Restatement (Second) of Torts § 46 comment d). As noted above, no conduct of Wells Fargo was "so outrageous in character" as to amount to intentional infliction of emotional distress.

*(10) The District Court does not have supplemental jurisdiction over state claims.*

The District Court dismissed all federal claims in the suit. As a result, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). We review a District Court's decision for abuse of discretion. Here, judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for the District Court to hear the state law claim. Particularly, since this case sounds in probate, there is a strong reason for federal courts to not interfere. Thus, the District Court did not err by

12

refusing to maintain supplemental jurisdiction over Appellant's claims against Hoover and Johnson.

### C. Motion for Recusal

A magistrate judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). He shall also disqualify himself "[w]here in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter." *Id*. at § 455(b)(2). Cole argues that the magistrate judge should have been recused because he worked as a lawyer at a law firm that represented a life insurance company in an unrelated action that Cole was a party to. There is no evidence, however, suggesting any partiality on behalf of the magistrate judge. He never served as, or with, a lawyer in this present matter. Nor is there evidence that he worked on that unrelated action. The District Court did not abuse its discretion by denying the motion for recusal. *See, e.g.*, *County of Hudson v. Janiszewski*, 351 Fed. App'x 662, 668 (3d Cir. 2009) (affirming a trial judge's decision to not recuse even though he had a relationship with the law firm representing plaintiffs).

CONCLUSION

We thus will affirm the District Court's order granting Summary Judgment.

13